ANNA STARK, as Administratrix of the Estate of NOAH STARK, Deceased, Respondent, *v.* NATIONAL CITY BANK OF NEW YORK et al., Appellants, and ANNA STARK, Individually, Respondent, Impleaded with Others.

Argued May 23, 1938; decided July 7, 1938.

*Carl A. Mead* and *Lester Kissel* for National City Bank of New York, appellant. Since investment by a trustee in non-legal investments is not tortious, the defendant bank would not be liable if it had assisted the administratrix in making such an investment. (*Steele v. Leopold*, 135 App. Div. 247; 201 N. Y. 518; *Hoyt v. Dollar Sav. Bank*, 187 App. Div. 243; 231 N. Y. 583; *Delafield v. Barrett*, 245 App. Div. 33; 270 N. Y. 43.) The exchange of Bancitaly and Bank of Italy stock for Transamerica stock was not wrongful. (*Brown v. Campbell*, Hopk. Ch. 233; *Hogan v. DePeyster*, 20 Barb. 100; *Matter of McCafferty*, 147 Misc. Rep. 179; *Collinson v. Lister*, 20 Beav. 356.) Where an innocent third party deals with a trustee or fiduciary, with knowledge of the trust, and the act of the fiduciary may be either perfectly proper or a breach of trust, the third party is not liable to the beneficiary, unless he had actual knowledge of the fiduciary's breach of trust and consciously participated or aided therein. (*Bischoff v. Yorkville Bank*, 218 N. Y. 106; *Fidelity & Deposit Co. v. Queens Co. Trust Co.*, 226 N. Y. 225; *Manufacturers Trust Co. v. United States Mortgage & Trust Co.*, 122 Misc. Rep. 726; 213 App. Div. 345; 244 N. Y. 550; *Clarke v. Public Nat. Bank & Trust Co.*, 259 N. Y. 285; *Havana Central R. R. Co. v. Central Trust Co.*, 204 Fed. Rep. 546.) The bank as a corporation, did not participate in the transaction. (*Higgins v. Western Union Tel. Co.*, 156 N. Y. 75; *Hartell v. Simonson & Son Co.*, 218 N. Y. 345; *Linstead v. Chesapeake & Ohio Ry. Co.*, 276 U. S. 28; *Denton v. Yazoo & M. V. R. R. Co.*, 284 U. S. 305; *Mayor v. Tenth Nat. Bank*, 111 N. Y. 446; *Bienenstok v. Ammidown*, 155 N. Y. 47; *First Nat. Bank v. Ocean Nat. Bank*, 60 N. Y. 278; *Gause v. Commonwealth Trust Co.*, 196 N. Y. 134; *Camacho v. Hamilton Bank Note & Eng. Co.*, 2 App. Div.

369; *Carney* v. *New York Life Ins. Co.*, 19 App. Div. 160; *Caldwell* v. *Mutual Reserve Fund Life Assn.*, 53 App. Div. 245; *Chard* v. *Ryan-Parker Construction Co.*, 182 App. Div. 455.) Even if the exchange had been tortious, the bank would not be liable to the plaintiff, unless it knew that the act was tortious and guiltily profited therefrom. (*Hoyt* v. *Dollar Sav. Bank*, 187 App. Div. 243; 231 N. Y. 583.)

*William D. Whitney, Richard A. Rosan* and *Samuel B. Stewart, Jr.*, for Transamerica Corporation, appellant. Section 111 of the Decedent Estate Law (Cons. Laws, ch. 13) does not impose liability upon a corporation for issuing to a fiduciary its securities which are not within the classification of the section. (*Delafield* v. *Barret*, 270 N. Y. 43; *Matter of Adriance*, 145 Misc. Rep. 345; *Matter of McCafferty*, 147 Misc. Rep. 179; *Matter of Cady*, 211 App. Div. 373; *Matter of Dalsimer*, 251 App. Div. 385.) An exchange of securities not within the section's classification imposes no liability, unless such exchange is the proximate cause of the loss. (*Boronkay* v. *Robinson & Carpenter*, 247 N. Y. 365; *Laidlaw* v. *Sage*, 158 N. Y. 73; *Koch* v. *Fox*, 71 App. Div. 288; *Matter of Adriance*, 145 Misc. Rep. 345.)

*Saul J. Lance* and *George H. Schwartz* for respondent. The defendants-appellants having participated in a transaction whereby assets of a decedent estate were disposed of to acquire securities not authorized by section 111 of the Decedent Estate Law are liable to the estate for the value of the property so disposed of. (*King* v. *Talbot*, 40 N. Y. 76; *Matter of Robbins*, 135 Misc. Rep· 220; *Matter of Myers*, 131 N. Y. 409; *Matter of Leonard*, 118 Misc. Rep. 598; *Steele* v. *Leopold*, 135 App. Div. 247; 201 N. Y. 518; *Deobold* v. *Oppermann*, 111 N. Y. 531; *Zimmerman* v. *Kinkle*, 108 N. Y. 282; *Wetmore* v. *Porter*, 92 N. Y. 76; *Moss* v. *Cohen*, 158 N. Y. 240; *Warren* v. *Union Bank*, 157 N. Y. 259; *Broderick* v.

*Aaron*, 151 Misc. Rep. 516; *National Surety Co.* v. *Manhattan Mortgage Co.*, 185 App. Div. 733; 230 N. Y. 545; *Squire* v. *Ordemann*, 194 N. Y. 394; *Clarkson Home* v. *Missouri K. & T. Ry Co.*, 182 N. Y. 47; *First National Bank* v. *National Broadway Bank*, 156 N. Y. 459; *Matter of Stupack*, 274 N. Y. 198.) The defendant Transamerica Corporation is liable upon the further ground that it sold to the estate an unauthorized and improper investment and is, therefore, liable to the estate for the money and property belonging to the estate which it received. (*National Surety Co.* v. *Manhattan Mortgage Co*, 230 N. Y. 545; *Empire State Surety Co.* v. *Cohen*, 93 Misc. Rep. 299; *Wormely* v. *Wormely*, 8 Wheat [U. S.] 421; *Mechanics Bank* v. *Seton*, 1 Peters [U. S.], 299; *Hill* v. *McIntyre*, 39 N. H. 410; *Boisseau* v. *Boisseau*, 79 Va. 73; *Asberry* v. *Asberry*, 33 Gratt [Va.] 463; *Matter of Title & Mortgage Guarantee Co.*, 246 App. Div. 436; 270 N. Y. 629; *Pink* v. *Title Guaranty and Trust Co.*, 298 N. Y. Supp. 544; *Bonham* v. *Coe*, 249 App. Div. 428.) The stock of Transamerica Corporation was an unauthorized investment for the funds and property of an estate whether such investment was made by purchase and payment of cash or by purchase and payment of other stock in exchange. (Cons. Laws, ch. 13, § 111; Cons. Laws, ch. 41, § 21; *National Surety Co.* v. *Manhattan Mortgage Co.*, 185 App. Div. 733; 230 N. Y. 545; *Matter of McCafferty*, 147 Misc. Rep. 179; *Broderick* v. *Aaron*, 151 Misc. Rep. 516; *Matter of Rolston*, 162 Misc. Rep. 194.)

LEHMAN, J. Noah Stark died in June, 1928. His widow was appointed administratrix of his estate. Among the assets of the estate were twenty-four shares of Bancitaly Corporation and thirty shares of Bank of Italy. In October, 1928, notice was sent to the stockholders of these corporations that Transamerica Corporation had been formed for the purpose of acquiring control of Bancitaly Corporation and of the Bank of Italy and that one share of Bancitaly stock might be exchanged

for one share of Transamerica stock and one share of Bank of Italy stock for one and three-quarters shares of Transamerica stock. The notice stated that the stock might be delivered for exchange to " James F. Cavagnaro, Vice-President, Bank of America, 680 Broadway, New York City." In September, 1929, an attorney representing the estate of Noah Stark went to the Bank of America at 680 Broadway and received there the information that the Bancitaly and Bank of Italy stock belonging to the estate might be exchanged for 192 shares of Transamerica stock upon payment of $2,137 exacted to adjust rights or equities which had arisen since the original offer. Upon those terms the exchange was consummated. Five years later when the market value of Transamerica stock was only a fraction of its value at the time the exchange was made, the administratrix brought this action to recover the value of the securities belonging to the estate and also the money delivered by the plaintiff as administratrix to obtain the Transamerica stock.

An administratrix is under a duty to distribute the assets of the estate or their proceeds after payment of taxes, administration expenses and debts. The plaintiff, as administratrix of the estate, might hold the assets of the estate for the time reasonably required for administration of the estate. Pending such administration she might, we assume, invest moneys in the estate in the " kind of securities " in which fiduciaries are authorized to invest trust funds. (Decedent Estate Law [Cons. Laws, ch. 13], § 111.) If an administratrix invests the assets of the estate in *other* " kind of securities " she may be held to account for the consequent loss to the estate. The stocks of the Bank of Italy and of the Bancitaly Corporation which belonged to the estate, like the stock of Transamerica Corporation received in return for that stock and an additional payment in cash, are not the kind of securities in which trust funds may be invested. The plaintiff, as representative of the estate,

now asserts that through that transaction she wasted the assets of the estate and that the defendants National City Bank, as successor in interest of Bank of America, and the Transamerica Corporation wrongfully aided and abetted her in such waste and that they and the agents, through whom they acted, are liable to her, as the representative of the estate, for the consequent loss.

The trial court has granted judgment in favor of the plaintiff against the corporate defendants, who are required to take back the Transamerica stock transferred to the estate and to pay to the plaintiff the value of the stock which they received from the estate in the exchange. The court did not require the defendant to return to the plaintiff, in addition, the moneys paid to the corporations as part of the consideration for the exchange. These moneys did not belong to the estate, but were borrowed by the administratrix. The court held that the administratrix cannot be allowed on her accounting any credit for moneys borrowed by her for investment or other unauthorized purpose and that, therefore, the waste of these moneys would cause no loss to the estate. The court dismissed the complaint against the individual defendants who acted as agents of the corporate defendants. It also dismissed various cross-claims for indemnity which the defendants made against each other and against Anna Stark individually. The Appellate Division affirmed the judgment with the modification, only, that the dismissal of the cross-claim of the defendant National City Bank against Anna Stark individually should be " without prejudice " instead of " upon the merits."

Since no appeal was taken by the plaintiff, the dismissal of the complaint against the individual defendants is not subject to review now; nor is the refusal of the trial court to include in the judgment a provision for the return of the money paid as part consideration for the stock of Transamerica Corporation. The question is, however, properly raised by the defendant corporations

whether a judgment on the merits in favor of the officers or agents through whom the corporate defendants acted does not destroy the foundation of the claim of liability asserted against them for loss resulting from these acts. (Cf. *Pangburn* v. *Buick Motor Co.*, 211 N. Y. 228; *Schubert* v. *Schubert Wagon Co.*, 249 N. Y. 253.) Questions of who may be held responsible for wrong committed and the extent of the responsibility are, of course, subordinate to the question of whether there has been any wrong. If upon the undisputed evidence it appears as matter of law that these defendants did not participate in any wrong to the estate, no other question need be decided. We pass first upon the fundamental problem presented by the appeal.

Liability, if any, must rest upon proof, *first*, that the administratrix wasted the assets of the estate by investment in common stocks, and, *second*, that the corporate defendants wrongfully participated in such waste. We have said recently that though investment of trust funds in a kind of securities not authorized by the statute is not forbidden by statute and is not tortious at common law, yet " public policy requires   *   *   *   that where other than permitted investments are made, the estates shall be reimbursed in the event of loss." (*Delafield* v. *Barret*, 270 N. Y. 43, 49.) Those who knowingly assist a trustee in making such investments may subject themselves to similar liability. (*National Surety Co.* v. *Manhattan Mortgage Co.*, 185 App. Div. 733; affd., 230 N. Y. 545.) In those cases the fiduciary was under a duty to invest the trust fund prudently and in suitable securities, in order that the beneficiary might enjoy the income, but the fiduciary caused a loss to the trust fund by investments in securities which were not of the " kind " in which, by statute, the fiduciary was expressly permitted to invest trust funds. In the instant case securities belonging to the estate, which were not " permitted investments " and which it was the duty of the adminis-

tratrix to *sell* within a reasonable time, were converted into securities which, like the original securities, were not " permitted investments " and which again it was the duty of the fiduciary to sell.

Did that transaction constitute an investment within the meaning of the statute and the cases where liability for loss sustained was imposed upon a fiduciary? The plaintiff in her complaint described the transaction as an " exchange or conversion " of shares of stock of Bancitaly Corporation and of Bank of Italy into shares of stock of defendant Transamerica Corporation. The trial court has found that the transaction was a purchase or investment. Description of the transaction by the plaintiff or by the court does not change its character or give rise to rights and liabilities. There is no substantial dispute between the parties as to what the plaintiff and the defendants did. The court must determine whether there is any evidence which shows that *what they did* constitutes a wrong or neglect of duty owed to the estate. Without wrong or neglect there can be no liability.

The complaint alleges, and the defendants have by stipulation admitted, that at the time of the delivery to the defendants of the stock of the Bancitaly Corporation and the stock of Bank of Italy which belonged to the estate, the Bancitaly stock had " a market value of One Hundred and Sixty-four Dollars per share " and the Bank of Italy stock " a market value of Two Hundred and Eighteen and 50/100 Dollars per share." It was the duty of the plaintiff as administratrix to sell or dispose of that stock within a reasonable time and at the best price she could obtain by the exercise of reasonable diligence. Within those limits the time and manner of such sale rested within the discretion of the administratrix. If the administratrix, disregarding her duty, made no effort to sell the stock but chose to hold it for years in the hope of gaining profit or other advantage, she would doubtless be chargeable with the resultant loss if the

stock declined in value. She would have no greater right to hold the Transamerica stock which she received in exchange for the original stock than to hold the original stock. We assume, then, that the plaintiff might be charged by the estate with the loss resulting from her failure to *sell*, within a reasonable time, the stock belonging to the estate or the stock for which that stock was exchanged, regardless of whether or not the exchange itself was wrongful.

The defendants, however, are not responsible for the injury resulting to the estate from the failure of the plaintiff to *sell* the stock within a reasonable time. They had no share in the plaintiff's fault there. They are chargeable, if at all, only with loss resulting from the *conversion* of the stock of the estate into Transamerica stock. It does not appear that the stock of Transamerica could not have been sold as readily as the stock for which it was exchanged or for as much money as would have been obtained from the sale or other disposition of the original stock. Though the parties have stipulated that the stock of Bank of Italy and of Bancitaly Corporation had a market value, it appears from uncontradicted testimony that there were very few sales of those stocks but that the market for the stock of Transamerica was active. We quote verbatim the testimony elicited on cross-examination from a witness produced by the plaintiff: " Q. Can you state whether in September, 1929, there was an active market in New York City in Bank of Italy stock? A. I don't believe there was an active market in the stock in September, 1929. Q. It wasn't listed anywhere in New York? A. It wasn't listed, no. Q. It was dealt in in California if anywhere? A. Yes. An odd lot every once in a while would appear over the counter in New York; that is about all. Q. The same is true of Bancitaly, isn't it? A. In September, 1929? Well, Bancitaly was practically retired at that time. Q. Practically all of it had gone into Transamerica

before then? A. Yes. Q. There practically wasn't any market in New York or anywhere for Bancitaly? A. That is right. Q. It was, however, exchangeable for Transamerica? A. Yes, sir. Q. And Transamerica was listed on the Curb in New York, wasn't it? A. Yes, sir. Q. And actively dealt in? A. Yes, sir."

It is against the background of that situation that we must appraise the acts of the parties. An administratrix under a duty to dispose of stock for which there is " practically " no market but which is " exchangeable " for stock for which there is an active market, might be subject to a charge of lack of prudence if she did not make that exchange. Where one stock is freely interchangeable for another stock, it is rare indeed that the ratio of market values of the stocks is not fixed by the ratio upon which the exchange may be made — and as we have said, there is no contention here that the stock received by the estate in exchange for the stock owned by the estate did not have a market value as great as the market value of the stock which the estate owned.

We have, like the plaintiff, called the transaction an exchange — we do not mean that the transaction may not in some respects have been analogous to a new investment. (Cf. *Mertz* v. *Guaranty Trust Co.*, 247 N. Y. 137; *Matter of Anson*, [1907] 2 Ch. 424.) Regardless of the label we may attach to the transaction, we cannot ignore the fact that it is a step in the administration of the estate which a prudent administratrix might take for the proper protection of the estate, unless the law refuses to countenance or approve such action. The result of the transaction was that the estate acquired stock which could be more readily sold than the stock which the estate previously held and at a price no less than the price which could be obtained for the original stock. To charge the administratrix with liability for the loss accruing from holding an " unpermitted investment " accords with the public policy of the State as formulated

in *Delafield* v. *Barret* (*supra*). To charge the administratrix and those aiding her with liability for taking part in a transaction which a prudent person might take for the purpose of liquidating the assets of the estate, would only tend to hamper the administration of estates and be contrary to a sound public policy. It would prevent an administratrix from availing herself of an offer which might benefit the estate and which would not subject the estate to any substantial new risk.

In the cases where the courts have imposed liability upon those who aided a fiduciary in waste of the assets by " unpermitted investments," the third parties knew, or should have known, that the fiduciary was using the assets of a trust estate in breach of his trust or in violation of the duty of the fiduciary to conserve those assets prudently and honestly. (See American Law Institute, Restatement of the Law of Trusts, § 326.) For the most part they are cases where a broker knowingly participated in the use of moneys held in trust for the purchase of speculative securities (Cf. *Delafield* v. *Barret, supra,* and cases there cited), or where a person aided a trustee in the conversion of trust property with knowledge or notice of the limitation of the trustee's authority. (Cf. *Deobold* v. *Oppermann,* 111 N. Y. 531; *Zimmerman* v. *Kinkle,* 108 N. Y. 282; *Squire* v. *Ordemann,* 194 N. Y. 394; *Wetmore* v. *Porter,* 92 N. Y. 76; *First Nat. Bank* v. *National Broadway Bank,* 156 N. Y. 459.) In all these cases the transaction in which third parties participated was either tortious or placed upon the trust estate a risk which the fiduciary was under a duty to avoid. They do not support a rule of liability where no such factors are present.

Upon what basis then can the defendants in this case be charged with wrong? A public offer to exchange Transamerica stock for other stock had been made by Transamerica Corporation and had been accepted by a large majority of interested stockholders. The plaintiff, represented by an attorney, asked that the estate be

accorded the benefit of the privilege or right which the other stockholders had obtained. To deny to an estate a privilege accorded to others would be unfair unless it appeared that injury might result to the estate. We have shown that the transaction could not possibly cause injury to the estate if it constituted a step in the administration of the estate. There is nothing in the record which shows that injury would result to the estate by the exchange itself even if the administratrix did not intend to dispose of the assets of the estate within a reasonable time but sought to obtain and hold Transamerica stock as an " unpermitted investment." The administratrix, might, so far as appears, have held, with equal readiness, the stock which originally belonged to the estate, if the defendants had refused to accord to the estate the privilege of exchanging it; or the plaintiff, if she had chosen, could have sold the original stock and, with the proceeds, could have bought the Transamerica stock.

The defendants have dealt with a fiduciary in the same manner as they dealt with other stockholders. They were strangers to the estate. The only duty they owed to it was to refrain from interference with its assets in manner which they knew or should have known might cause injury to the estate. Conflicting considerations of public policy enter into the rule or measure of responsibility which the courts impose upon third parties who deal with a faithless or even imprudent fiduciary. In all jurisdictions third parties are held responsible for loss caused to an estate by transactions with a fiduciary in which they participated with actual knowledge that the fiduciary was committing a breach of trust. In England the courts have hesitated to impose liability upon third parties dealing with a fiduciary in the absence of such actual knowledge of the breach of trust or conduct amounting to bad faith. (Cf. *Barnes* v. *Addy*, 9 Ch. [App. Cas.] 244; *Matter of Barney*, [1892] 2 Ch. 265. See Scott, Participation in a Breach of Trust, 34 Harv. L. R. 454, 464, 465.) The courts there have recognized and have given weight

to the fact that a rule of responsibility based on notice or even constructive knowledge would to some degree hamper ordinary commercial transactions and delay the legitimate transfer of securities by fiduciaries.

In this country, in most jurisdictions, third parties who knowingly deal with a fiduciary may at times be held liable for loss caused to the estate where there is notice that the fiduciary may be committing a breach of trust. (Cf. American Law Institute, Restatement of the Law of Trusts, § 325; *Loring* v. *Salisbury Mills*, 125 Mass. 138; *Baker* v. *Atlantic Coast Line R. R. Co.*, 173 N. C. 365.)

In those jurisdictions of this country which have adopted the Uniform Fiduciaries Act, the measure of responsibility, at least in cases which come within the purview of that act, is restricted as in England. By chapter 344 of the Laws of 1937 the Legislature added article 23-B to the General Business Law (Cons. Laws, ch. 20). The note of the Law Revision Commission states that the purpose of the article " is to expedite the transfer of securities by fiduciaries with title, relieving trust estates from delay resulting from the rule imposing a stringent duty of investigation upon corporations registering transfers." Section 359-j of that article is identical with section 3 of the Uniform Fiduciaries Act. (9 Uniform Laws, Annotated, p. 149.) It provides:

" § 359-j. Registration of transfer of securities held by fiduciaries. If a fiduciary in whose name are registered any shares of stock, bonds or other securities of any corporation, public or private, or company or other association, or of any trust, transfers the same, such corporation or company or other association, or any of the managers of the trust, or its or their transfer agent, is not bound to inquire whether the fiduciary is committing a breach of his or its obligation as fiduciary in making the transfer, or to see to the performance of the fiduciary obligation, and is liable for registering such transfer only when registration of the transfer is made

with actual knowledge that the fiduciary is committing a breach of his or its obligation as fiduciary in making the transfer, or with knowledge of such facts that the action in registering the transfer amounts to bad faith."

The statute, though not retroactive, is a legislative declaration of a public policy. We need not, however, resort to it in this case. Here there is not only absence of actual knowledge by the defendants that the fiduciary contemplated a wrong to the estate but also absence of notice or of constructive knowledge of any wrong. The administratrix in the proper exercise of her functions in the course of the administration of the estate was justified, if not, indeed, required, by ordinary prudence to avail herself of the offer of the defendants, to convert stock in two corporations, for which there was no active market, into stock in a company which controlled these corporations and for which there was an active market. The defendants committed no wrong by joining in making a transfer to the administratrix which the administratrix properly requested. In the absence of bad faith on their part they are not responsible for loss caused to the estate by misuse of the stock thereafter by the administratrix.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur; CRANE, Ch. J., taking no part.

Judgments reversed, etc.