# In the Matter of the Estate of MARY DEB. MACAULEY, Deceased.

Surrogate's Court, New York County, October 24, 1936.

*H. Edwin Gold,* for the accounting executor.

*John H. McCormick, Jr.,* for the objectant.

DELEHANTY, S.   In her will deceased directed her two sons, whom she named as her executors and trustees, to set apart a fund sufficient to produce $125 per month net; and to pay from the income on the fund to objectant here up to $125 per month, retaining any income balance for themselves.   Objectant served as nurse to deceased's sons during their infancy and adolescence and thereafter served as companion to deceased till the latter's death.   Deceased's sons qualified as executors.   They retained a firm of attorneys to act for them in estate matters and for a period of years committed the securities of the estate and the business management of the estate assets to these attorneys.   Deceased died in 1929.

At her death deceased was the owner of a parcel of land which was burdened with a moderate mortgage and which was leased for a term of years to a single tenant who paid the taxes and in addition a rental which left a balance of more than $125 per month after mortgage interest was paid.   The attorneys for the estate attended to the collection of the rents and generally supervised this property as well as the securities of the estate.   They kept the securities in safe custody and set up on their books an estate account in which they recorded to the credit of the estate all cash received (whether capital or income cash) and in which they recorded as a charge against the estate all disbursements (whether for capital or other purposes) and in which they charged themselves with the balance. Into the items of this account went all collections of capital assets, all income on securities and all rents of the real estate.   Out of the funds thus commingled they paid to objectant $125 per month, the interest on the real estate mortgage, their own fees and expenses,

sums representing income due the sons of deceased, and other items. They eventually were directed by the executors to deliver to a bank for account of the executors all of the securities (except a mortgage certificate) and thenceforward they had in their hands only a balance of cash amounting to some thousands of dollars, the mortgage certificate, the income on it, and the currently accruing rent from the real property.

When the lease of the realty expired by its terms the building became vacant and a source of expense. The cash balance in the hands of the attorneys was used for their own fees and for the continuance of the monthly payments to objectant until it was exhausted. Payments to objectant then stopped. Her efforts to obtain the income directed to be paid her resulted in these compulsory accounting proceedings. One only of the executors has accounted; the other has wholly ignored the order to account. He is bound by the order nevertheless and the court has power, notwithstanding his contumacy, to state his account from any sources available to the court. (Surr. Ct. Act, § 260.) A belated claim to the entire estate, urged by the executors as beneficiaries of an agreement between their father and mother, was overruled. Various objections to the account as filed have been heard but the problem in the last analysis is whether the executors ever validly set up the capital of the trust for objectant.

In support of the claim that the trust was in fact set up, the accounting executor produced from the files of his former attorneys certain correspondence relating to the subject and he called as witnesses persons in that firm who had direct supervision of the estate affairs. The attorneys so called do not agree with the executor and his present attorney as to the meaning of the correspondence. It is clear in any event that one of the executors inquired whether the realty could be set up as the principal of a trust and was advised that it could not. It is clear, too, that this executor was advised that if the realty were conveyed to a corporation whose shares were held by the estate, these shares would be available for trust distribution. The former attorneys assert that this advice referred to the will as a whole and to the three trusts directed to be set up; and they assert that an equal and ratable distribution of the shares into the capitals of the various trusts could have been defended in the circumstances of this estate and because of the terms of the will. The accounting executor and his present attorney assert on the other hand that the correspondence had only the trust for objectant as its subject-matter and that the executors understood the advice given them to be that they could set up objectant's trust by using the shares of the realty corporation as its capital. They assert that the

executors acted on that advice and did in fact direct their former attorneys to organize the corporation for the purpose of having it take title to the real estate; and that after the realty was transferred they then set apart the shares as the capital of objectant's trust. The equity in the realty at deceased's death exceeded $30,000 and the accounting executor asserts that in good faith he and his coexecutor regarded the equity as adequate to produce the required income.

No proof is presented that the corporate shares were in fact set up as the trust capital. No act of the executors has been shown which accomplished that result. The shares were issued to and are still in the name of the estate of Mary B. Macauley. Inference is resorted to in the effort to establish the point. The facts disclosed on the hearing show a complete disregard of the directions in the will in respect of the other trusts. Instead of dividing into four parts the residue of the estate after setting up a trust capital for objectant and instead of setting up two additional trusts with capitals comprised respectively of one of such quarter parts, the executors took all the assets (except the real estate and the cash balance in the hands of their original attorneys) and divided them equally. Each one handled the half received by him without regard to the other and without regard to the will. The accounting executor has now none of the estate assets so received by him. There is no proof as to what happened to the other half of the residue delivered to the executor who has not accounted. The inference which the court is asked to draw is that since nothing else was left for objectant's trust but the realty or the corporate shares they must have been used for the purpose claimed. The court is not willing to draw that inference.

In further support of the claim that the trust was set up the accounting executor offered proof designed to show that objectant knew that her trust capital had been constituted of the realty corporation shares, that she expressly assented thereto and that she is now estopped to assert the contrary. Objectant is a woman of about eighty without business experience. She knew her benefactress owned and had leased the realty. She knew that the rental was part of the estate income. She knew that she got checks from the attorneys for the estate drawn on their own account. But nothing has been shown which even remotely establishes knowledge on her part that any trust was ever set up for her. Her benefactress intended her to have $125 per month and she got that sum from the lawyers until the remittances suddenly stopped. Not until then did she have occasion even to think about, much less to inquire about, any trust administration. The record is barren of any writing

either addressed to her or written by her which advised her that her income was indissolubly tied up with the real estate. She was peculiarly entitled to rely on the good faith of the executors in their dealings with her. Not only was she a *cestui que trust* but she was their old nurse, their mother's companion and, except in blood, a recognized member of their family. She was not required to check the sources of her income. She was entitled to rest on the assumption that her interests had been protected to the uttermost and that her declining years had been safeguarded by the children she had helped to rear.

The proof of supposed admissions of hers is of no substance. The oral testimony of the witnesses who with the accounting executor made a surprise visit to objectant in the absence of her attorney is so garbled as to be incoherent but so far as it can be given coherence it goes no further than to show that objectant knew the estate had the realty and the rents therefrom. The affidavit of objectant made on December 17, 1935, wherein she refers to the trust as having been set up in 1931 is in real fact the recital by her attorney of the claim to that effect made by the accounting executor. Objectant's earlier letter of March 11, 1935, is a complete denial by her of knowledge of any setting up of the trust and a complete denial of any consent on her part to the use of the realty corporation shares as its capital. The tenor of the precedent letter of the attorneys is notable since it shows that only as of March 1, 1935, did the attorneys learn of what the executors claimed to have done in the way of setting up the trust. Objectant's denials of knowledge are credited by the court.

The discussion of the controversy up to this point has proceeded on the assumption that the executors might valididly have constituted the trust fund for objectant out of the realty corporation shares. The court holds the contrary and holds that nothing short of a clearly established estoppel would bar objectant from repudiating the acts of the executors even if they had in fact set up the trust as one of them now claims. The account filed shows that deceased left liquid securities of large value as well as the real estate. The latter was a minor though not negligible part of her estate. The pertinent provisions of the will are:

"*Fourth.* I direct my executors and trustees hereinafter named to set aside from the principal of my estate a sufficient sum to produce an annual income of One hundred and twenty-five dollars ($125.) per month free from all taxes and charges of every kind and nature and to hold said sum in trust * * *.

" Upon the death of said Jeanne Rose Vernaz to distribute the principal of said trust fund in equal shares between my said sons."

" *Seventh.* * * * I hereby authorize and empower my Trustees hereinbefore named, their successor or successors, to mortgage or lease any and all real estate of which I may die seized or any part thereof at their discretion, or to sell the same at public or private sale, at such times and on such terms as they may deem best, and hereby give them full power to make, execute and deliver good and sufficient deeds, mortgages, leases or other evidences of conveyances for the same or for any part thereof.

" I further authorize and empower my Trustees hereinbefore named, their successor or successors, to invest from time to time, any part of my estate which may require investment in any interest-bearing securities which may in their discretion seem advisable, not being limited to the securities recognized by law as proper for the investment of trust funds, or to retain any investments made by me prior to my death, without incurring liability for any loss or losses which may result from such investment or investments so made or retained.

" It is my wish and desire and I therefore direct that the trustees hereinbefore named, their successor or successors, be not required to set aside any part of the income derived, from any security forming a part of the principal of the trusts hereinbefore set up to create a sinking fund to retire or absorb any premium which may have been paid upon the purchase of such security, or to make any other provision for possible depreciation in the value of any security constituting or forming part of said trusts occasioned by the approaching maturity of such security or otherwise.

" It is my wish and desire that the beneficiary of the trusts hereby created shall have the benefit from any unusual or extraordinary dividends declared upon any securities which may form a part of the trusts created for their benefit, and I therefore direct that any unusual or extraordinary dividends either in stock or in cash, which may be declared during the continuance of said trusts, upon any securities which may form a part of the principal thereof, shall be treated by my said trustees as income and shall be distributed forthwith to the beneficiary thereof."

The argument is made that the terms of the will giving powers over the realty and giving authority to invest in so-called non-legals authorized the use of the realty corporation shares as the principal of the trust. The will does not warrant that conclusion. The quoted clauses speak of a " fund " and of " interest-bearing securities," etc. This language does not justify the putting of real estate into this trust as its sole asset through the medium

chosen. The shares of a corporation organized to hold real estate are not " interest-bearing " within the meaning of this will. It is not necessary here to say whether it might have been proper to allot to this trust a fair cross-section of all the estate property on a parity with the other trusts. That question is not presented here. It was plain discrimination against the objectant and in their own favor for the executors to take for themselves all the liquid assets of the estate and to foist on objectant the non-liquid asset. Good faith on their part (even if that could be assumed) would not justify their acts against her objections. Her challenge now made must be sustained.

There seems to be authority in this State for holding that even if the executors had privately set apart the realty shares as the capital of the trust and even if the income paid to objectant came exclusively from the realty to her knowledge, she would still be entitled to call the executors to account and to require them to set up a trust for her constituted of proper securities. (*Matter of Kinnear*, 265 N. Y. 645, not reported in full.) The record on appeal in the cited case shows that there, as here, the will directed the setting apart of a fund to produce a stated sum for designated beneficiaries, that the executors informally set apart bonds in a sufficient amount and delivered the bonds to one of their number who actually paid the income therefrom to the beneficiaries for a time, that this sole executor sold the bonds and bought shares of stock with the proceeds, that he pledged the shares for a personal loan and that the shares were sold out by the pledgee, thus wiping out the so-called trust fund. The proof showed that for thirteen years the beneficiaries had been paid the income derived from the original bonds set apart or from the stocks purchased with the bond proceeds. The record shows that, as here, the executors divided the residue among themselves. They did not violate the terms of any trust in so doing. Some of the residuary securities after distribution were given by one of the executors to his wife. This gift antedated any misuse of the bonds. The question was presented in a discovery proceeding initiated to recover the property so given to the executor's wife whether her title and hence her husband's title was good as against a trust beneficiary on a showing that in the informal manner described the executors had set apart bonds sufficient to establish the trust fund. The surrogate held that the trust had not been properly set up and that the beneficiaries were not bound by what had been done and that the estate could recover the estate securities in the wife's hands. The Appellate Division affirmed by a divided court, one justice stating his view that the trust had been adequately set up and hence that the

wife's title to the other securities was good. The Court of Appeals affirmed without opinion. We have been cautioned that such affirmance in that court evidences only its concurrence in the result reached below. However, the briefs in the Court of Appeals show that the question whether the acts of the executors sufficed to set up a trust was presented clearly. The briefs show too that the successful party argued that only a formal setting up of the trust or the explicit assent of the beneficiaries to what was done would suffice to discharge the whole body of the securities of the estate from the burden of the trust. The case is in point here and supports the conclusion reached by this court both on the facts and on the law that no trust was ever validily set up by the executors for the objectant. Her objections to those phases of the account which purport to represent as the capital of her trust the shares of the realty corporation are in all respects sustained.

The executors will be directed now to set up such trust fund in interest-bearing securities having a market value of $40,000. Any surplus income produced by a fund of that amount will be payable to the executors under the terms of the will. The capital value fixed seems to be the minimum to assure payment to objectant of $125 monthly in the future. The executors will be surcharged with the amount necessary to pay to objectant all defaulted installments of her income, with interest to the date of the decree on the respective installments.

In view of the contumacy of the non-accounting executor the court will adjust his account on the basis of the gross estate reported by the accounting executor and will adjudge that he has with his co-executor all the assets received by them less only the amount expended for debts and administration expenses. The deductions referred to in schedule B-2 will not be allowed since the executors are charged with having the securities still on hand. The credit claimed in schedule E-1 for legacy paid to the cemetery association is allowed. The credit claimed under schedule E-3 is disallowed. The income schedules are approved with the single proviso that the executors are surcharged for income unpaid to objectant in the amount hereinabove fixed. No commissions will be allowed until the trust fund for objectant has been set up.

All objections not covered by the foregoing rulings are overruled.

Submit, on notice, decree settling the accounts of both executors in conformity with the directions herein.