In the Matter of the Estate of F. JUDSON HESS, Deceased.

Surrogate's Court, Monroe County, June 15, 1939.

*W. B. Zimmer*, for the executors.

*F. C. Wickes*, special guardian.

FEELY, S. In this judicial settlement the court is asked to construe the will in respect to the character of permissible investment by the testamentary trustees. There are three trusts created by this will, and in each there is found the same provision, briefly

expressed, as to investments; but, aside from that, the will is silent on the subject.

The first trust differs from the two others only in that this is like an annuity, being a trust to pay an adult friend the income of $5,000, with enough of principal to make up monthly payments of $100 each. The second trust is on $3,000 to provide honor plaques for units of the National Guard and the Naval Militia. By the third the residue of the estate is entrusted for the benefit of his nearest kin, two nephews and a niece, all of whom are adults. Their children are the infant parties who will take if their parents die within eight years. The funds available for setting up the residual trust consist of about $156,000 worth of " legals " and of $125,000 in " non-legals." These are all the testator's own investments.

In each of the three trust provisions, there is the same direction, to invest in " good interest-bearing securities." The second provision adds the words " in the discretion of the trustees;" as is the case also in the residuary clause, which directs that " all investments and re-investments shall be made in the discretion of the trustees in good interest-bearing securities."

If this provision, that is common to the three trusts, be read literally and alone, the comment might fairly be made that no matter how broad his authority, every trustee must use " discretion " in each trust act he does, and he must purchase only those securities that are " good;" and only those that are both " interest-bearing " and actually productive, unless in the last regard very clear permission is given by the will to buy unproductive ones. The law itself would impose this duty upon the trustees even if this phrase had been omitted from this will. The phrase " good interest-bearing securities " expresses literally only the ordinary course of conduct to be followed rather than a permission to do the extraordinary. To do the latter correspondingly clear permission must be found. (See *Matter of Robbins*, 135 Misc. 220.) There the trustee was directed to keep the funds " safely and conservatively invested," and the court, without expressly emphasizing the word " conservatively," held this wording fell short of permitting the trustee to go beyond the legal or statutory limits.

So, where the direction to the trustee was to keep the fund " invested at interest in such manner and upon such security and at such rate of interest as to him in his discretion shall seem proper and suitable " (*Matter of Reed*, 45 App. Div. 196), the court held such language " conferred upon the trustee a general discretion and no more. It did not authorize him to make any specific investments,

and it did not authorize him to transcend the general rule applicable to the duties of trustees." In support of that ruling the court there cites a case in which the direction was that the trustees should place the fund " out at interest at their discretion," and another case is cited where the will entrusted to the trustees' discretion " the settlement of my affairs and the investment of my estate for the benefit of my heirs."

In *Adair* v. *Brimmer* (74 N. Y. 539) the will empowered the executors to invest in " other lands or buildings, or bonds and mortgages, or such other securities as they shall deem safe and for the greatest benefit of my said daughters," but still the court held this did not allow the executors to go outside the general rule. Here the specified things may have limited the effect of the general words " other securities," under the rule " *ejusdem generis*."

Hardly ever are any two wills found to have been worded just alike, yet those that are reported can be roughly grouped, from the viewpoint of permissible investment, into two classes, one of which comprises the cases mentioned above. The other group may be distinguished from the former by the presence in it of indications, lacking in the first group, that testator meant the trustees to obtain the highest return consistent with safety of principal. Such intention is found clearly expressed in substantially those words in the *Matter of Leonard* (118 Misc. 598) and also in *Clark* v. *Clark* (23 id. 272). In other cases such intention is derived largely by inference from the facts that the beneficiaries were the widow and or the infant children, or the dependents of the testator; and that the will speaks of the trust or the investing being for the " best interest " of the estate or of the legatees. Thus, in the *Matter of Leavitt* (135 Misc. 387), the trustees might " for the best interest and conservation of my said estate * * * sell and * * * reinvest * * * in other income bearing securities as they select as being reasonably safe for the investment of trust funds." Stressing the right here given to " select," Surrogate SLATER found implicit permission here both to retain non-legals and to reinvest in them. In the *Matter of Hall* (164 N. Y. 196) the court found evidence that testator intended his business should go to his children. There the trustees were directed to invest " as they may deem for the benefit of my estate and calculated to carry out the intention of this my last will."

In the light of later decisions and of modern economic conditions, it is possible there might be a broader meaning found today than was found when the court considered the direction in the will in *Adair* v. *Brimmer* (74 N. Y. 539) that the trustees seek " the greatest

benefit of my said daughters." However, that will also carried a specification of particular types of investment which may have restricted such general terms as those last quoted.

In *Matter of McDowell* (102 Misc. 275; modfd., 193 App. Div. 914; modfd., 230 N. Y. 601) the will directed the trustees to "invest * * * as they shall deem wise and judicious for the best interests of the beneficiaries." These were the testator's sister-in-law, his son and the latter's wife, and descendants. In one of the appeals in that case (178 App. Div. 243) the court notes that "in order to give the life beneficiaries a larger income" and to benefit also the remaindermen, certain things were to be done. This took the case out of the statutes. Likewise, in *Lawton* v. *Lawton* (35 App. Div. 389), where the trust was expressly for the maintenance and education of testator's infant children, and the direction was to invest "in such securities as to said executors shall seem best."

In *Duncklee* v. *Butler* (30 Misc. 58) testator had held till death some non-legals; and he left a widow and an infant child. His will directed his estate be kept invested in "good sound dividend paying securities;" and declared that the trustee might reinvest "at his own discretion." The court there said: "testator undoubtedly desired a fair rate of income for the beneficiaries, and well knew that the highest class or [of] court securities would afford but a small yearly return."

*Matter of Maloney* (120 Misc. 456) appears to belong in this privileged class, because the brief report of it indicates the testator left a daughter and an infant party in interest; and the direction was that the fund be invested by the trustees "in accordance with their best judgment and discretion."

*Matter of Wilmerding* (135 Misc. 674) also appears to belong in this class, because its brief report shows the ruling is based on *Matter of Leonard* (118 Misc. 598, *supra*). An infant was a party there also.

In the case at bar, there is nothing in the mere wording of this will that even implies either that the largest safe return was to be sought, or that the main beneficiaries, the nephews and the niece, are dependent on testator. Their children, the infant grandnephews, have only a contingent interest. However, the special guardian argues, in effect, for the larger return, inasmuch as he is of opinion the will allows investment in non-legals; but he contends that there is nothing ambiguous in the wording of this will, and that the search for testator's intention cannot be carried outside of will and into a consideration of testator's oral declarations of his intentions, as set out in the affidavit of one of the

executors; although the guardian also is of opinion the court may properly consider the fact that testator had almost a half of his holdings in " non-legals " when he made this will.

There may be said to be ambiguity to this extent that had this testator, having in mind that half his holdings were in non-legals, intended to permit his trustee to retain them or to buy more, instead of using the literally useless expression that he did, he could have worded his intention somewhat more fittingly had he said in the will that his trustee might invest in " securities bearing good income," for this phrase might be construed to be in accord with the group of authorities last cited, and thus forestall possible sacrifice or loss in nearly half his estate, with a reduction in income, which would have ensued had the will failed to lift the statutory bar. It may well be inferred that the inverse of the phrase last quoted, to wit the phrase actually used — " good interest-bearing securities," (notwithstanding the omission of a comma after " good " in each instance), was meant, in the circumstances, to express something more than merely to declare what the law declares any way; and that the object intended to be hit was to allow the trustee to invest in the better income bearing class, but the verbal instrumentality happened only to be " aimed in that general direction." Any such permission would imply a right to retain items of that class at the threshold of the trust.

My conclusion, therefore, is that, in the setting in which this will was written, the expression in it in reference to " good income-bearing securities " was really meant to signify " securities bearing good income," intending thereby good non-legals; and that the management of the trust up to the date of this accounting in respect of the general character of investment or re-investment has been such as testator intended by the language used in his will as aforesaid.

Let the decree of judicial settlement herein be framed also in accord with this decision, and be entered.