Leon Schwebzmann, Jb., S.
The sole issue in this construction proceeding is whether the testatrix by her gift under Paragraph TWELFTH of the will “ in trust, to invest the same in good, interest hearing securities,” intended to limit the petitioner trustee’s investments thereunder to interest-bearing securities. I find that such was her intent, and that accordingly the trustee is precluded from investing the funds of this trust in such common stocks and other equities as are now permissible legal investments under section 21 of the Personal Property Law.
The testatrix died on April 4, 1934. Her will as probated consisted of two documents, the original will executed on December 30, 1931, and a codicil executed on July 9, 1932. Paragraph TWELFTH of the original will contained the following provision :
“ One-Fourth of said residum, being the balance thereof, to said Fifth Avenue Bank of the City of New York, in trust, to invest the same in good, interest hearing securities, and collect the income therefrom, and after payment of taxes and expenses, to pay the net income to my said Son, Boswell Flower Taylor, in quarter yearly payments, during his life, for his support and *61 maintenance, and upon Ms death, I give, devise and bequeath, and direct said Trustee to pay the principal sum then remaimng, as he, my said Son, may by last Will and Testament limit and appoint, and in default of such appointment, I give said principal sum to his Wife, Helen Taylor, and his children, to be divided among them and the survivors equally.
“ In the foregoing provisions, the word ‘ Children ’ is used synonymously with ‘ Child ’ and I direct the same to be so construed.
“ I hereby authorize said Trustee to retain any investments that I may have at the time of my decease, which in its judgment are safe. I give full power to said Trustee to sell any of the securities it may receive from my estate whenever it shall be deemed advisable to do so.
“ The trusts herein created make up one property and many of the investments for that purpose are now made. It is my wish and request that said Trustee, for the purpose of computing commissions, shall treat all of the trusts held by it respectively, as one, and shall compute one commission on principal, and one on income, the same as if it were one trust and one commission.” (Italics supplied.) It will be noted that substantially the same phrase as italicized above was employed by the testatrix in eight other provisions of the will. Six separate gifts under Paragraphs Third, Sixth, Seventh, Eighth, Ninth, as well as one under Paragraph SECOND of her codicil, are made in trust, “ to invest * * * in safe, interest bearing securities ”. Two gifts under residuary Paragraph TWELFTH, one of wMch is here being considered, as well as the gift under Paragraph Tenth, are made in trust, “ to invest * * * in good, interest bearing securities. ’ ’ The only other evidence which has been submitted is the tax appraisal of the estate and a stock broker’s statement reflecting events occurring after the testatrix’ death; neither, of course, standing unconnected, has any probative value as to circumstances existing on the date of execution of the will. The son and life beneficiary, Roswell F. Taylor, subsequently released his power of appointment.
To clarify some confusion apparent in the argument of this matter, it might be well to restate a familiar principle. We are not seeking here some conjectural future intent of the testatrix, what she might have intended had she envisaged that the Legislature was going to broaden the field of permissible legal investments. Rather we are seeMng her expressed intention as of a definite time, the date of execution of this will; and circumstances occurring after that date cannot vary or change *62 that intent (Morris v. Sickly, 133 N. Y. 456, 459). If this testatrix on December 30, 1931 intended to restrict the investments of her trustee to interest-bearing securities, that intention must prevail; and the subsequent act of the Legislature in amending section 21 of the Personal Property Law can have no bearing upon that intent. This well-known common-law principle has been incorporated in paragraph (n) of subdivision 1 of section 21 of the Persona] Property Law.
“ (n) Nothing in this subdivision shall be deemed to limit the effect of any will, agreement, court order or other instrument creating or defining the investment powers of a fiduciary, or to restrict the authority of a court of proper jurisdiction to instruct the fiduciary in the interpretation or administration of the expressed terms of any will, agreement or other instrument or in the administration of the property under the fiduciary’s care.”
The normal, as well as the precise legal, meaning of the words “ in trust, to invest the same in good, interest bearing securities ” is clear and unambiguous, if we may consider them as standing alone. The phrase ‘ ‘ in trust to ’ ’ has long had judicial significance as prefacing or introducing the very purpose or purposes of a trust. It is not merely a right, but a duty, of the trustee to respect a trust purpose; and I am aware of no reported decision which has construed the words ‘ ‘ in trust to ’ ’, when not otherwise qualified, as connoting anything less than a mandate. The specific words ‘ ‘ in trust to invest in ’ ’ have been considered mandatory (Matter of London, 104 Misc. 372, affd. 187 App. Div. 952; Matter of Smith, 133 N. Y. S. 2d 285; apparently contra Matter of Gillis, 117 N. Y. S. 2d 454). The term ‘ ‘ interest bearing securities” has been held to exclude the shares of stock in a corporation (Matter of Macauley, 161 Misc. 525, 530-531; Matter of Morris, 153 Misc. 905, 907; Williams v. Cobb, 219 F. 663, 667; Kinney v. Uglow, 163 Ore. 539). Thus the investment clause here concerned, if read in its normal sense, clearly expresses an intention to limit the investments of the trustee to interest-bearing securities. The context is quite different on its face from those clauses in which an element of permissibility or freedom of choice is implicit in the language used, i.e. where investment in interest-bearing securities is “ authorized ” or “ empowered ” (Matter of Marx, N. Y. L. J. March 15, 1957, p. 14, col. 1; Matter of Jackson, 109 N. Y. S. 2d 634, revd. 282 App. Div. 690; Matter of Bry, 126 N. Y. S. 2d 682; Matter of Marquand, 203 Misc. 284; Matter of Katte, 106 N. Y. S. 2d 155; Matter of Hilliard, 197 Misc. 1094; Matter of *63 Emery, 199 Misc. 396) or where such investment is left to ihe “ discretion ” of the trustee (Matter of Hess, 171 Misc. 690).
“It is a general rule of construction that when a testator uses technical words, he is presumed to employ them in their legal sense, and that words in general are to be taken in their ordinary and grammatical sense unless the context clearly indicates the contrary ” (Matter of Krooss, 302 N. Y. 424, 429). Is there elsewhere in this will any clear indication of a different investment intent? The able counsel for the petitioner contends that in other clauses of this will there are such indicia of a contrary intent as would permit this court in the alternative either (a) to construe the words “ in trust to invest ” as permissive, or (b) to construe the words “ good, interest bearing securities” as equivalent to “legal securities” or “income bearing securities ”. The difficulty with these clauses upon which the petitioner relies is that, far from evidencing the clear, contrary intent which is necessary, each may be given effect and read perfectly consistently with the investment restriction which the testatrix has made. First, it is urged that the testatrix’ use of the adjective “ safe ” modifying the words “interest bearing ’ ’ in other paragraphs of the will and codicil, when contrasted with her use of the modifier ‘‘ good ’ ’ in this paragraph, has significance. Concededly, this usage may not be dismissed as unintentional, but if we are to credit the testatrix and her draftsman with any degree of logic, it seems far more probable that the testatrix intended to differentiate in emphasis between the quality of the interest-bearing securities which were to be selected for the respective trusts, than that she would have deliberately employed a self-contradictory phrase, in which the word “ good ” was intended to negate the meaning of the words “ interest bearing ”. Secondly, petitioner urges that the words “ many of the investments for that purpose are now made ”, by reference to the investments she then held, is an indication that stocks were within her contemplation as an investment. As we have noted, there is no proof as to the type of investments which the testatrix owned when her will was executed, so the meaning of the reference stands unexplained as far as extrinsic evidence is concerned. But if we were to assume that the testatrix’ portfolio was substantially the same when she executed the will as when she died, this language in no way conflicts with her investment restrictions. Obviously, as her portfolio consisted of a preponderance, over 73% by value, of interest-bearing securities, ‘ ‘ many of the investments for that purpose ”, i.e., in interest-bearing securities, would in fact have *64 been made for the trustee. Finally, it is urged that the trustee’s authorization “ to retain any investments * * * Avhich in its judgment are safe ’ ’ indicates an intent, as Avell, to permit the trustee to invest in any kind of securities. The fallacy of this reasoning seems obvious. While it is unnecessary to so decide, it may be noted that there is serious question as to Avhether under this particular retention clause, emphasizing as it does “ safe ” securities, she intended to permit the trustee to retain common stocks (King v. Talbot, 40 N. Y. 76). But even assuming it to be her intent to permit the retention of stocks, the investment conclusion Avhich the petitioner draAvs therefrom neither necessarily nor logically folloAvs. The authority to retain may not be equated to the authority to make neAv investments (Matter of Westerfield, 193 Misc. 443, 445, mod. 278 App. Div. 153, affd. 303 N. Y. 916; Matter of Davison, 134 Misc. 769, 772, affd. 230 App. Div. 867; Matter of Reeb, 198 Misc. 1081; Matter of Gillis, 117 N. Y. S. 2d 454, 457, supra). The danger in attempting to read a poAver of retention into a poAver of investment is self-evident, for their purposes and underlying intents are wholly dissimilar. The function of a power of retention is to permit the fiduciary to continue the investment of securities which the testatrix herself has selected; the function of a power of investment is to define those securities which the fiduciary or its successor may select. To assume that simply because a testatrix has eAÚdenced confidence in her own investment selections, she shares that same confidence in the investment selections of others, would be wholly unwarranted.
Possibly this testatrix did intend her investment provision to be permissive, or possibly she did intend the words ‘ ‘ interest bearing securities” to mean something else, but that remains pure conjecture. These other words and phrases upon which the petitioner relies do not say so; it is only if we speculate as to their meaning, and then adopt the least plausible of two possible interpretations, that any element of conflict enters. It is never incumbent upon a court to speculate, for ‘ ‘ intention is not matter of speculation or arbitrary conjecture ” (Matter of Krooss, 302 N. Y. 424, 429, supra); but certainly if speculation were to be indulged in, this court would not be warranted in preferring an interpretation which negates the express words of the testatrix to one consistent therewith. “ Words are never to be rejected as meaningless or repugnant if by any reasonable construction they may be made consistent and significant.” (Matter of Buechner, 226 N. Y. 440, 443.)
The facts and circumstances surrounding the execution of this will support the conclusion that this testatrix intended her *65 investment provision to be read as written. The will was executed in 1931 and the codicil in 1932, a period during which this court may take judicial notice that stocks and other equity securities were in a state of collapse (Matter of McCafferty, 147 Misc. 179, 204) and in relative investment disfavor vis-a-vis more stable interest-bearing securities. From a practical investment viewpoint, the overall residuary disposition which the testatrix has made for each son, when considered as a whole, is logical. By limiting one half of the gift, or nearly $600,000, to ultraconservative interest-bearing securities, and then giving the remaining one half in an equivalent amount to the son outright, free of any investment restrictions whatsoever, she has effected an aggregate gift which is equally balanced or hedged as to possible investment risk. This is a pattern of giving which might reasonably be attributed to an investment-wise mother, concerned with the long-term welfare of her son. The testatrix was a women experienced in the field of investments and thoroughly cognizant of the distinction between interest-bearing and dividend paying securities; the probability that the significance of the term “interest bearing” would have been lost on her seems small. Her draftsman was a skilled practitioner of many years experience, presumably conversant with the mandatory and restrictive significance of the technical language he has used. Without invoking this presumption of skill, there is evident recognition in this will of the difference between a power and a mandate, for in the very paragraph here being considered the contrasting words “authorized” and “full power ” are used; there appears similar recognition of the mandate inherent in words of trust, for in Paragraph THIRTEENTH the careful distinction is made that ‘ ‘ This is the expression of a wish and not a trust.” That a testatrix familiar with the meaning of the words “ interest bearing securities ”, and her draftsman familiar with the technical significance of the language he has selected, both would have used the same words in at least nine separate instances, inadvertently, ignorantly or mistakenly— meaning something quite different in both a lay and a legal sense — is a proposition which requires far more proof than is present here.
The Court of Appeals has stated in Matter of Watson (262 N. Y. 284, 293); “ We have, however, only one rule to follow— it is fundamental. The intention of a will-maker is to be found in the words used in the will, and when these are clear and definite there is no power to change them.” The testatrix’ words, “ in trust, to invest the same in good, interest bearing *66 securities ” are perfectly clear and definite, evidencing an intent to restrict the investments of this trust to securities which bear interest. As no clear, contrary intent appears elsewhere in the will, her words must be given effect as written.
Submit decree.