## Lowry Estate

*Mervin J. Hartman, Zoob, Cohan & Matz,* for accountants.

*Leslie J. Carson, Jr.,* p.p., guardian ad litem.

SHOYER, J., October 3, 1968.—This trust arises under the will dated July 31, 1930, a copy of which is hereto annexed, of John C. Lowry, who died November 10, 1932, whereby he gave his entire residuary estate to The Real Estate-Land Title and Trust Company, The Provident Trust Company, and his daughter, Ethel Lowry Montgomery, in trust, to divide the cor-

pus into two equal parts, and . . . to pay the net income to his daughter Ethel Lowry Montgomery, his son-in-law Dr. William J. Montgomery, his grandson John Lowry Montgomery, his daughter-in-law Margaret H. Lowry, and his granddaughter, Margaret H. Lowry, Jr., and to the survivors of them, share and share alike, for their respective lives, and the whole of said net income unto the last survivor of said five persons for the life of such survivor and upon the death of the last survivor of the five persons named, the trust is to continue and the income therefrom is to be paid to the child, children and issue of his grandchildren. John Lowry Montgomery and Margaret H. Lowry, Jr., the issue of a deceased child to take by representation, for a period of 21 years, at which time the trust is to terminate and the principal is to be divided into as many parts as there shall be children of the decedent then dead represented by descendants then alive, and such parts are to be paid per stirpes, or in default of such issue then principal is to be paid to 10 named nephews and nieces of testator and their issue. . . .

### COUNSEL FEE

The guardian ad litem's report points out that credit is taken in the account for the payment of the sum of $2,400 as fee to counsel for the accountants. In the related trust account the sum of $2,350 is credited for payment to counsel for the accountants. Mr. Carson states that these fees are fair and reasonable and less than those fixed by the Philadelphia Bar Association's Minimum Fee Schedule. After consideration of the work involved, the size of the fund, and the professional ability of counsel, and guided by the fee schedule, I am of the opinion that the fee suggested is fair and reasonable in amount. Mr. Carson points out, however, that the will limits the amount of counsel fee. The will provides in next to its last item:

"I direct that any and all counsel fees paid or to be paid by my Executors and by my Trustees shall not exceed the sum of Three Thousand Dollars ($3,000)".

Mr. Carson would deny the accountants any credit for payment of counsel fees. He contends that the accountants undertook to administer the trust in accordance with the testator's direction and that the testator's limitation on the amount of counsel fee has already been exceeded. The report recites, page 9, that Judge Van Dusen was confronted with the same problem when he audited the account of the executors of this estate in 1933. Judge Van Dusen's adjudication disposed of the question as follows:

"All parties in interest who are in being have agreed in writing that counsel for the accountant shall be paid a fee of $5,000. It is apparent on the face of the account and of the matters brought up at the audit that this is a reasonable fee, and I so find. It might be granted for the purposes of this case that a testator could limit commissions of executors, because this is an office which the executor takes under the will, and in accepting the office he impliedly accepts the conditions.

"The counsel is chosen by the executors and can be paid only so much or so little as his services are worth for the services which he actually has to perform. The fee depends very largely on services, and the size of the estate is only one element, bearing upon the responsibility involved. If a difficult tax litigation had to be conducted, for example, it would be unthinkable that the executors would be unable to conduct it to protect the estate, because they were limited by an absurdly small fee. The same consideration applies to the ordinary services of counsel, and the situation is different only in degree. All interested persons who are in being and sui juris agree to it. I will allow a counsel fee of $5,000".

The question of counsel fee in the instant accounting was not raised by any of the parties in interest and it is not referred to in any of the adjudications of any of the prior accounts of either of the two trusts. Yet in each account the counsel fee charged, although modest in each case, when added to the $5,000 counsel fee allowed by Judge Van Dusen's adjudication, further increased the amount by which testator's limitation was exceeded. To have denied any fee to counsel in connection with the audit of those accounts would have interfered with the orderly administration of the trusts.

Mr. Carson cites 5 Partridge-Remick Pennsylvania Orphans' Court Practice §39.10(c), page 534 (1964), for the rule that payment of a reasonable compensation from the corpus is "subject to any provisions in the will", citing Alderfer's Estate, 56 Montg. 172 (1940). The will there provided: "It is my desire that my said executor employ . . . as his attorney, and he is to receive the sum of Three hundred . . . Dollars for his services". Judge Laub, specially presiding, said at page 174:

"When it comes to the clause of the will fixing compensation for the attorney mentioned therein, the same rule applies as does to the accountant. The attorney having accepted the duties of counsel for this estate is bound by the limitations set forth in the will in the absence of extraordinary services. The record in this estate does not show any such extraordinary services".

In his supplemental report Mr. Carson cites Robinson's Executors v. Robinson, 297 Ky. 229, 179 S. W. 2d 886 (1944), and In re Bissinger's Estate, 34 Cal. Rptr. 219 (Cal. App. 1963), which seem to follow the rule in Alderfer. However, New York, which he also cites, does not approve such limitations except in those instances where testator has specified an alternative. Thus in

Matter of Roth, 291 N. Y. 1, 50 N. E. 2d 281 (1943), compensation to both executor and counsel was restricted as follows:

" 'Second: I hereby nominate , . . . as Executor and Trustee of this my Last Will and Testament, Meier Steinbrink, Esq., who is at present a member of the law firm of Jones, McKinney & Steinbrink, . . . hereby *directing* that said Executor and Trustee qualify and serve as such without compensation. In all purely legal matters relating to the proving of this Will, the administration of my estate and the execution of the trusts hereinafter created, he is authorized, however to employ counsel at an expense not to exceed the sum of One thousand Dollars, which sum of One thousand Dollars shall be in lieu of all other fees, allowances, or other compensation. Should the said Meier Steinbrink, Esq., refuse to qualify and serve as such Executor and Trustee *upon the conditions herein imposed,* I hereby name, designate and appoint my beloved wife Pearl Roth and my nephew Jesse Roth Executors and Trustees of this my Last Will and Testament *without any qualifications whatsoever.*' (Emphasis supplied.)"

After noting the surrogate's allowance of $2,698.42 to accountant's attorney, and $250 to the attorney for a beneficiary who opposed the surrogate's construction of the will, the court upheld the restriction on counsel fee in the following language, pages 4-5: "Such a disposition of the problem presented upon the probate of the decedent's will disregards, we think, the testamentary plan for the administration of his estate. Under such plan—for reasons not known to us but apparently sufficient to satisfy the testator's desire in that regard—the nomination of the petitioner as executor and trustee was clearly burdened with conditions. The problem would be different if, without specifying an alternative, the testator had nominated only the peti-

tioner as his executor and trustee and had attempted by his will to dictate the choice of his executor's counsel and to fix the maximum amount of fees which could be paid for legal services. Such limitations, in cases where the wills involved prescribed no legal alternatives, have met with disapproval when challenged in our courts. (Matter of Caldwell, 188 N. Y. 115, 121; Matter of Olney, 255 App. Div. 195)".

Here, of course, testator has specified no alternative. The very language of the instant clause in this will is decisive of the problem, however. In examining the clause containing the limitation I find the language to be unclear and ambiguous. Does the restriction place a limitation upon the aggregate fees of all counsel during the continuance of the combined administration by his executors and by his trustees? Or, does the limitation apply only to the fees of all counsel in connection with a particular audit of "any" account by the executors or "any" account by the trustees? The word "all" does not always mean *everything without exception:* Crozer's Estate, 342 Pa. 71, 74-77.

I am inclined to the construction of the language that the limitation is intended to restrict the fee of *all* counsel in connection with *each* account and audit thereof. Such construction is more in line with the size of the residuary trust estates, their probable duration and the history of the two trusts to date.

In this view the objections by Mr. Carson are without merit. The counsel fee is allowed in the amount indicated in the account.

The general rule requires in connection with an interim accounting that costs be charged to income or partly to income. However, since in the instant matter the account was filed to benefit principal, [by merging the two trusts], and income receives little, if any, benefit therefrom, the costs will be charged entirely to principal.

436

And now, October 3, 1968, the account is confirmed nisi.