In the Matter of the Estate of JAMES P. OLNEY, Deceased.

STODDARD M. STEVENS, Special Guardian for Infants, BARBARA VAN DYKE LAMBERT and Others, Appellant; THE FARMERS NATIONAL BANK AND TRUST COMPANY OF ROME, NEW YORK, as Executor, etc., of JAMES P. OLNEY, Deceased, Respondent.

Fourth Department, October 5, 1938.

*Stoddard M. Stevens*, special guardian for the infants [*Edward A. Wolff* of counsel], for the appellant.

*Michael J. Larkin*, for the respondent.

TAYLOR, J.   James P. Olney died on August 15, 1928, leaving a last will and testament dated April 5, 1928, which was duly admitted to probate on September 18, 1928, and which, by its terms, erected two trusts, one for the benefit of his wife, his daughter Florence Lambert and her children, the other for the benefit of his wife, his daughter Marion Stevens and her children.   Under the trusts, the daughters receive a life use in one-half of the residuary estate, subject to the payment to his widow of a stated annual allowance; upon termination of the trusts, testator's grandchildren are to receive the corpus.   The will named as executor and trustee the respondent on this appeal.

On November 15, 1932, respondent petitioned the Surrogate's Court for a judicial settlement of its account covering its proceedings as executor and trustee from the date of its appointment up to and including September 30, 1932.   The special guardian for the remaindermen filed objections to the account, all of which were withdrawn except the objections to (1) the payment of a $15,000 fee by respondent to its attorney for legal services, (2) the investment by respondent of trust funds in certain guaranteed mortgage certificates, and (3) the exchange by respondent of Rome Brass and Copper Company shares of stock for securities of the Revere Copper and Brass Company, Inc.   After a trial of the issues, the surrogate ruled in favor of respondent.   The special guardian appeals from so much of the decree as directs the dismissal of these three objections.

The surrogate properly dismissed the objection to the amount which respondent paid to its attorney for legal services to the estate. He found as a fact that the attorney for respondent rendered services which were reasonably worth $15,000.   Appellant does not question the propriety of this finding but relies upon testator's direction " that any attorney's fees  *  *  *   be approved both by my executor and trustee and the surrogate administering the estate " and that all such fees for services to the estate, " including

the final settlement of the trusts, shall not total in excess of $2,000." An analogous question arose in *Matter of Caldwell* (188 N. Y. 115, 121) where the court held that a testator could not control his executors in the choice of attorneys to act for them in their representative capacity because executors "may incur a personal liability for the conduct of their lawyers." The same reasoning applies to a testamentary limitation in respect to the amount to be paid for legal services to the estate.

The facts, upon which is based the objection to the investment of trust funds in guaranteed mortgage certificates, are not disputed. On September 6, 1929, respondent purchased three $5,000 guaranteed mortgage participation certificates which it deposited with the State Tax Commission and withdrew cash in like amount which it had theretofore deposited to secure payment of such contingent transfer taxes as might thereafter be assessed against the distributees under the will. The deposit of securities, in lieu of cash, was authorized by section 241 of the Tax Law, as amended by chapter 402, Laws of 1927, and effected a saving to the estate inasmuch as only two per cent was paid on cash deposited whereas the certificates yielded five and one-half per cent. Since these certificates were legal investments for trustees (Dec. Est. Law, § 111), the appellant would have no cause for complaint were it not for the fact that the will specifically limited the investment of trust funds in mortgage certificates to those issued with the following conditions existing:

" (a) An outside trustee, such trustee either a Trust Company or a National Bank.

" (b) A guaranteed title policy.

" (c) A guarantee of payment of principal and interest by some responsible Surety or Guaranty Company."

Respondent concedes that the certificates which it purchased did not conform to condition " (a)." The surrogate held that the purchase of these securities "was detail in connection with the immediate administration of the estate as an executor and not a long term investment that more properly applied to the functions of a trustee." While the deposit of the moneys was a necessary administrative step, the purchase of these securities with moneys of the estate, for the purpose of securing to the estate a higher interest rate, was unquestionably an investment of the trust funds and was contrary to the express provisions of the will. An executor or trustee who invests trust funds in disregard of the provisions of the will is deemed to have made the investment for his own account and not for that of the estate. (*Adair* v. *Brimmer*, 74

N. Y. 539; *Villard* v. *Villard*, 219 id. 482; *Delafield* v. *Barret*, 270 id. 43; *Matter of Rolston*, 162 Misc. 194.)

Appellant's objection to the exchange by respondent of Rome Brass and Copper Company shares of stock for securities of the Revere Copper and Brass Company, Inc., should not have been dismissed. The surrogate found that a provision of the will specifically authorized the exchange of the shares and their subsequent retention by respondent. The provision, upon which the surrogate relied, directs that certain mortgage bonds and mortgage notes, or stocks or securities which might be taken in place of such mortgage bonds or mortgage notes on any reorganization, extension or refinancing of the companies which issued the same or which may succeed thereto, might be retained by his executor and trustee but only until such time as they could be sold without unnecessary sacrifice. It is evident that this provision does not apply to either the Rome Brass and Copper Company shares or the securities of the Revere Copper and Brass Company, Inc.

The question remains, however, whether the transaction was of such a nature as to constitute a breach of respondent's trust duties. Testator authorized the retention of investments which he owned at the time of his death but directed that the trust funds be invested and reinvested only in certain classes of securities in which fiduciaries, by statute, are permitted to invest. Concededly, an original purchase by respondent of the Revere Copper and Brass Company, Inc., securities with trust moneys would have been illegal and contrary to the provisions of the will. Appellant contends that, in its legal effect, the exchange of the old shares for the new does not differ from an original purchase with the trust moneys; that it, in substance, is a new investment or reinvestment. The pertinent facts relating to this exchange are that testator, at the time of his death, owned two hundred preferred and thirteen common shares of stock of the Rome Brass and Copper Company, the issued and outstanding capital stock of which consisted of 30,000 shares of seven per cent preferred ($100 par value) and 53,974 shares of common ($100 par value). On December 12, 1928, the Rome Brass and Copper Company stockholders, at a special meeting, called for the purpose, authorized the sale of its assets to a new corporation (subsequently named Revere Copper and Brass Company, Inc.), which was formed to acquire and operate the businesses and properties of several independent concerns then engaged in the manufacture of brass and copper products. The purchase price was to be paid in securities of the new corporation. The Rome Brass and Copper Company was to be dissolved and the new securities distributed among its stock-

holders, pursuant to a plan which was approved at the stockholders' meeting. Stockholders were notified that no further dividends would be paid on the " present " stock and that any holder of preferred stock who did not desire to exchange such stock for the new securities might notify the company, prior to the meeting, that he elected to receive $110 per share and accrued dividends when the dissolution of the corporation was completed. The new corporation was authorized to issue six per cent first mortgage bonds of the total face value of $10,000,000, 200,000 shares of seven per cent preferred stock of the par value of $20,000,000, 1,000,000 shares of no par value Class A stock and 3,000,000 shares of no par value common stock. In exchange for the shares of the estate, respondent on February 8, 1929, received the new securities which, according to its account in this proceeding, it still holds in trust with the exception of some fractional certificates which it sold.

From this foregoing recital of the facts, it clearly appears that the new securities were analogous to a new investment, that the identity of the old shares was destroyed by the sale of the corporate assets and that " The shares have been issued in new proportions and classified in new ways, as common and preferred. The old investment has been subordinated to alien priorities " (*Mertz* v. *Guaranty Trust Co.*, 247 N. Y. 137, 142; see, also, *Matter of Franklin Trust Co.*, 84 Misc. 686, 689, 690), but the conclusion does not necessarily follow that respondent was guilty of a breach of its trust duties (*Stark* v. *National City Bank*, 278 N. Y. 388); respondent should not be held liable if it were diligent and prudent. (*King* v. *Talbot*, 40 N. Y. 76, 84, 85; *Matter of Weston*, 91 id. 502, 511; *Costello* v. *Costello*, 209 id. 252, 261; *Matter of Clark*, 257 id. 132, 136, 137; *Stark* v. *National City Bank, supra*.)

Whether respondent, in the exercise of reasonable prudence as an executor and trustee, should have accepted $110 and accrued dividends for the preferred shares of the Rome Brass and Copper Company or sold them at the market price instead of electing to exchange them for preferred shares in the new corporation, whether respondent should have sold the common shares or secured their value in cash by pursuing the course permitted by section 21 of the Stock Corporation Law instead of electing to exchange them and, if prudent, whether respondent failed to sell the new securities within a reasonable time after their acquisition, present issues of fact which were not determined by the surrogate.

The evidence as disclosed by the record lacks sufficient clarity and definiteness upon which to base a proper determination of these issues. Were the Rome Brass and Copper Company shares

listed on any stock exchange? Was there an active and open market for their sale between the time of testator's death and the sale of the corporate assets to the new corporation? Were the new securities listed on any stock exchange? The record does not clearly disclose the answers to these questions and others of equal importance. The ends of justice will best be served by remitting the indicated issues to the Surrogate's Court for determination.

The decree, in so far as it dismisses the objection to the amount which respondent paid to its attorney for legal services to the estate, should be affirmed;

The decree, in so far as it dismisses the objection to the investment of trust funds in guaranteed mortgage certificates, should be reversed on the law and respondent should be surcharged with the amount of principal invested in the mortgage certificates and, upon payment thereof to the estate, respondent is entitled to recoupment in reduction of the surcharge by delivering to itself the mortgage certificates;

The decree, in so far as it dismisses the objection to the exchange by respondent of Rome Brass and Copper Company shares of stock for securities of the Revere Copper and Brass Company, Inc., should be reversed on the law and the facts and the issues raised by this objection should be remitted to the Surrogate's Court for determination.

No costs should be awarded.

All concur. Present — CROSBY, LEWIS, CUNNINGHAM, TAYLOR and DOWLING, JJ.

Decree reversed in part on the law and in part on the law and the facts and matter included in the reversal remitted to the Surrogate's Court to proceed in accordance with the opinion and otherwise affirmed, without costs.