In the Matter of the Accounting of CENTRAL HANOVER BANK & TRUST COMPANY, as Trustee under the Will of MARY J. WESTERFIELD, Deceased.

Surrogate's Court, New York County, May 19, 1948.

*Arthur W. Siegrist* for trustee, petitioner.

*Washington Irving Levy,* special guardian for John R. Westerfield and another, infants, respondents.

COLLINS, S. The testatrix died on February 16, 1907, leaving a will in which she created a trust of $50,000 " of the best securities I may have at the time of my demise." The only direction respecting the investment of the trust assets appears in the fourth paragraph of the codicil which reads: " I do not wish any of my securities sold." The parties construe this text as a mandate that none of her securities be sold. A reading of the entire codicil makes clear that the testatrix used the word " wish " in a mandatory sense and that the expression of her wish was intended as a command to the trustees to hold the securities owned by her. The trustee properly recognizes that the direction to retain the securities is subject to an implied *power of sale* when the character of the investment becomes changed, or " in the face of an emergency ". (*Mertz* v. *Guaranty Trust Co.,* 247 N. Y. 137, 144; *Toronto Gen. Trusts Co.* v. *Chicago, Burlington & Quincy R. R. Co.,* 64 Hun 1, affd. on opinion below 138 N. Y. 657.) The question here presented by the trustee's request for a construction of the will is whether it has *authority to retain* certain securities of public utility corporations which it received and will hereafter receive from a holding company as liquidating dividends.

Among the securities of the testatrix received by the trustee were 300 shares of common stock of North American Company. In the course of years since the death of the testatrix the par value of the shares has been reduced and the number of shares proportionately increased with the result that the trustee now holds 1,500 shares of the common stock. The increase in the number of the shares long antedated the distribution with which we are here concerned.

North American Company was a holding company owning stock in many corporations, the majority of which operate electric and gas utility properties scattered throughout the United States. It was required to register as such under the Public Utility Holding Company Act of 1935 (U. S. Code, tit. 15, § 79). In appropriate proceedings instituted under that act, the Securities and Exchange Commission entered orders which limited North American's properties to those which complied with the standards set up by the act and directed it to divest itself of all of its other assets. (See *North American Co. v. Securities & Exch. Comm.*, 327 U. S. 686.) As a result of these proceedings the trustee received securities of Washington Railway and Electric Company, Wisconsin Electric Power Company and Potomac Electric Power Company. The greater part of these securities were received after the closing date of the account now being settled. The trustee expects to receive further distribution of stock of these corporations. It asks the court to construe the will and advise it whether it has the *authority to retain* these securities.

Under the will of the testatrix the authority to retain securities is inseparable from the direction to retain. No authority has been conferred upon the trustee respecting investments except such as is implicit in the command to retain the securities owned by the testatrix. The shares of the different operating companies were never owned directly by the testatrix. She, and afterwards her trustee, owned shares of the holding company which in turn owned the shares of the subsidiary corporations. The trustee now holds the shares of the holding company depreciated by virtue of the divestment of its assets and in addition it holds the shares of the subsidiaries. The question is whether these shares collectively are substantially the equivalent of the old investment. (*Mertz v. Guaranty Trust Co.*, 247 N. Y. 137, 141, 142, *supra*; Restatement, Trusts, § 231, comment f; 2 Scott on Trusts, § 231.4.) " Every case of this sort must be looked at on its merits in order to see whether the investment is the same." (*Mertz v. Guaranty Trust Co.*, *supra*, p. 141, quoting BUCKLEY, J., in *Smith v. Lewis* [1902], 2 Ch. 667, 672.) For instance, where a testator owned virtually all of the shares of a holding company which is subsequently liquidated and the holdings distributed to his estate, the new shares may be deemed the substantial equivalent of the old. (*Matter of Freed*, 71 N. Y. S. 2d 304.) On the other hand, where the testator was one of thousands of stockholders of a large holding corporation, a different result may be reached.

Investment in a large holding company possesses advantages not inherent in individual ownership of the shares of the separate ventures. " Justification for the institution [a holding company] is generally based upon its diminution of risk to the investor through geographical diversification of underlying properties, upon its ability to furnish the capital essential to the development of independent enterprises, and to satisfy more economically the needs of small operating companies for highly skilled engineering and management." (49 Harv. L. Rev. 957, 958.) All of these advantages have been enjoyed by the holders of North American stock and these advantages have largely disappeared through divestment of the holding company's interest in these properties and transfer of direct ownership to the individual stockholders.

In deciding the issues raised by North American Company respecting the validity of the orders made by the Securities and Exchange Commission, the United States Supreme Court said: " The various companies in the North American system perform a variety of functions from electric and gas service to railroad transportation, warehousing and amusement park operations. All told, they conduct business in seventeen states and the District of Columbia. Electric service alone is provided for more than 3,000,000 customers in an area of roughly 165,000 square miles." (*North American Co.* v. *Securities & Exch. Comm.*, 327 U. S. 686, 692.) The court said that while active intervention by North American in the activities of these companies had been of a limited character and while it had not sold them supplies or engineering services, its domination of the system was in fact no less real or effective. " But North American in some respects has actually intervened in the activities of its subsidiaries. It has affirmatively participated in and dominated their financing operations. So completely has it taken over the planning and handling of the various flotations of securities that North American urged before the Commission, though in vain, that the subsidiaries were incompetent to handle such matters and that it would be highly uneconomical for them to attempt to do so. As the Commission noted, the ability to dominate this financing and to control the flow, through underwriting channels, of millions of dollars of securities has been of great value and benefit to North American, in addition to being of aid to the subsidiaries. North American has also provided the subsidiaries with advisory and consultative facilities in relation to management problems; and intercompany com-

mittees have been created to serve as clearing houses for technical and accounting information.'' (Pp. 693–694.)

Adverting to an argument advanced by counsel, the court said further (p. 708): '' The taking of property is said to involve ' a vast destruction of values.' Reference is made in this respect to the valuable right of North American's shareholders to pool their investments and thereby obtain the benefit alleged to flow from efficient, common management of diversified interests. But Congress balanced the various considerations and concluded that this right is clearly outweighed by the actual and potential damage to the public, the investors and the consumers resulting from the use made of pooled investments. Under such circumstances, whatever value this right may have does not foreclose the protection of the various interests which Congress found to be paramount. See *Northern Securities Co.* v. *United States* [193 U. S. 197], *supra*. Nor does the value of North American's contributions as a holding company to the earning power and intrinsic value of the assets divested pursuant to § 11(b) (1) bar Congress from requiring such divestment. Congress has concluded from the extensive studies made prior to the passage of the act that the economic advantages of a holding company at the top of an unintegrated, sprawling system are not commensurate with the resulting economic disadvantages. The reasonableness of that conclusion is one for Congress to determine. The fact that valuable interests may be affected does not, by itself, render invalid under the due process clause the determination made by Congress.''

It is patent that the securities of the subsidiary companies constitute an investment vastly different from the one made by the testatrix. The old venture has been exposed to new and unexpected hazards. (*Mertz* v. *Guaranty Trust Co., supra*, p. 142.) The new securities received by the trustee are '' analogous to a new investment ''. (*Matter of Olney*, 255 App. Div. 195, 199; *Stark* v. *National City Bank*, 278 N. Y. 388, 398.) The court holds that the securities of the subsidiary corporations which are now held or will hereafter be delivered to the trustee are not the substantial equivalent of the investment owned by the testatrix and that, therefore, the direction to retain the securities owned by the testatrix at the time of her death does not apply to the stocks of the subsidiaries of the holding company. (*Mertz v. Guaranty Trust Co., supra; Matter of Olney, supra; Matter of Anson* [1907], 2 Ch. 424.)

Insofar as the shares of North American are concerned the " trustee finds upon his hands an investment, mandatory in its origin, but so changed as to be no longer mandatory, even if permitted. A power of sale attaches in such circumstances by implication of law ". (*Mertz* v. *Guaranty Trust Co., supra,* p. 144.) Changing circumstances may in time create a duty on the part of the trustee to exercise that power. The question whether the trustee has breached any duty in this respect for which it should be held accountable is one not presented by the pleadings and one which probably could not arise at this state of the administration.

It is argued that authority to retain the securities of the subsidiary companies is conferred by subdivision 6 of section 111 of the Decedent Estate Law, which reads: " No fiduciary shall be liable for any loss incurred with respect to any investment not eligible by law for the investment of trust funds if such ineligible investment was received by such fiduciary pursuant to the terms of the will, deed, decree of court, or other instrument creating the fiduciary relationship or if such ineligible investment was eligible when received, or when the investment was made by the fiduciary; provided such fiduciary exercises due care and prudence in the disposition or retention of any such ineligible investment.'' The court has already said that the question here at issue is not whether the trustee should be surcharged for a loss caused by a breach of duty but rather to what extent the mandate of the will is applicable to these particular securities. The cited statute has no application to the issue before the court. Independently of this statute the courts have held that the liability for continuing an investment no longer appropriate is not always the same as liability growing out of an investment unlawful in its origin. (*Matter of Clark,* 257 N. Y. 132, 136–137; *Costello* v. *Costello,* 209 N. Y. 252, 261; *Mertz* v. *Guaranty Trust Co.,* 247 N. Y. 137, 144, *supra.*) Neither the shares of the holding company nor the shares distributed by it constitute voluntary investments by the trustee (*Costello* v. *Costello, supra; Stark* v. *National City Bank, supra; Matter of Hoyt,* 294 N. Y. 373, 380) and within the limits prescribed by the cited authorities the time and manner of disposition of the securities rests within the business judgment and discretion of the trustee.

Submit decree on notice settling the account accordingly.