**In the Matter of the ESTATE OF Marvin E. SCHULDT, deceased.**

**No. 15909.**

Supreme Court of South Dakota.

Aug. 3, 1988.

---

John L. Morgan of Morgan, Theeler, Cogley & Padrnos, Mitchell, for appellants.

Walter C. Miller and Steven Bucher of Miller & Bucher, Plankinton, for appellee.

KEAN, Circuit Judge.

Six of ten residuary legatees (appellants) under the will of Marvin E. Schuldt (Marvin), deceased, appeal from a circuit court order approving the executor's final account. The portion of the final account appealed from concerns claimed excessive executor's fees, excessive attorney's fees, and real estate broker's fees charged by the estate's attorney, Walter C. Miller (Miller). We affirm in part, and reverse in part.

Marvin, a resident of Aurora County, died May 25, 1986. A petition for letters testamentary was filed with the circuit court on June 11, 1986. Marvin's will was admitted to probate on July 9, 1986, and letters testamentary were issued on the same day to Alton Schuldt (Alton), Marvin's brother, as provided in the will.

The scheme of the will is straightforward. After providing for the payment of expenses and taxes, Marvin made a series of small specific bequests. The residuary clause devised the bulk of the estate to ten charitable or nonprofit organizations. The last paragraph of the will directed Alton to obtain Miller's legal services as attorney for the executor of the estate, and "[D]irected that he [Miller] ... be paid a fee for such services not to exceed the minimum bar fee schedule of the State of South Dakota."

The inventory and appraisal filed with the court indicated the following assets:

| Item | Value |
| --- | --- |
| Real estate (four quarters) | $108,800.00 |
| Cash, Certificates of Deposit, Time Certificates, Credits and Dividends | 413,862.00 |
| Farm machinery, livestock other personal property | 98,806.00 |
| Gross Estate Value | $622,468.00 |

The probate proceeded without incident. In August 1986, Alton purchased $44,735.00 worth of property from the estate at the appraised value. Marvin's will granted him this right. A return of this sale was made to the circuit court. The inheritance tax return for the State of South Dakota was prepared and filed. A sale of the remaining personal property was completed at public auction and a routine return was duly made with the circuit court.

On September 9, 1986, Alton and Miller entered into a written agreement[1] where Alton hired Miller as a real estate broker to

---

1. The agreement between Alton and Miller states in part:

   THIS AGREEMENT made this *9th* day of *September*, 1986, by Alton Schuldt, Executor of the Estate of Marvin E. Schuldt, a/k/a Marvin Schuldt, Deceased (hereinafter called the Executor) and Walter C. Miller, a real estate broker, of Plankinton, South Dakota (hereinafter called the Agent);

   .   .   .   .   .

   AND WHEREAS, it is considered necessary that a real estate agent or broker be employed for the purpose of handling all of the matters necessary to sell and complete the private or public auction sale and prepare all of the papers necessary for the sale of such real estate and closing requirements;
   AND WHEREAS, the Agent is willing to conduct the sale of such real estate under the terms and conditions hereinafter set out:
   WITNESSETH:

   1. That the Executor does hereby appoint and select the agent to sell the hereinafter described real estate at private or public auction sale and agrees to pay such agent the fee of Five Per Cent (5%) commission on the selling price plus sales tax as is authorized under South Dakota law.
   2. In consideration of the listing the hereinafter described real estate for sale with the agent, the agent agrees to perform the following services:
   1. To pay the expenses in drawing any contracts of sale or closing papers as is necessary to be done for the closing of the sale.
   2. To do all that is necessary, in the ordinary sense of the term, in advertising and promoting the best and highest price for the hereinafter described real estate listed for sale.

   .   .   .   .   .

   4. To assist the executor in obtaining an auctioneer and clerk for the auction sale.

   .   .   .   .   .

sell the farmland at a public or private sale, stating it was necessary to sell the land to close the estate. Alton agreed to pay Miller a five percent fee plus sales tax on the sale price after the sale was confirmed by the circuit court.

The first hint of a problem arose in November 1986 when Alton petitioned for a reappraisal of the real estate citing the need to revalue the farmland because of the depressed farmland prices. Appellants objected to this request because it was premature to reduce the farmland value since no efforts had been made to sell it. They demanded that Alton use his best efforts to sell the land at public auction. The circuit court adjourned the hearing in December 1986 until some attempt had been made to sell the farmland at the appraised value in order to determine whether a market existed.

The farmland was sold at public auction to one buyer on January 19, 1987. The sale price exceeded the appraised value. When Alton made his return of the sale, he requested that Miller be paid a brokerage fee of $5,684.00 plus tax. Notice of the hearing was given to appellants, but they were unaware that Miller's brokerage fee was part of the sale confirmation process since no return of sale was sent with the notice. The sale was confirmed.

In Alton's final report and account, he noted these actual and anticipated disbursements from Marvin's estate:

| | |
|---|---:|
| Miller and Bucher ... Partial Attorney's Fees for Probate based on terms of Will & Executors (sic) agreement with attorneys | $ 9,664.91 |
| Miller and Bucher ... Balance of Attorney fees & sales tax as contracted with attorney | 9,285.09 |
| Walter C. Miller ... Real Estate Broker's fees & sales tax, pursuant to written contract of 5% on total selling price of Real Estate | 5,923.84 |
| Alton Schuldt ... Statutory Executor's fee | 17,341.75 |

Appellants first knowledge of the broker's contract came in Alton's final report. They filed objections to Miller's brokerage fee, the attorney's fees and the executor's fees. After a brief hearing at which no evidence was offered, the circuit court rejected appellants' objections and approved the final accounting.

## I.

### THE EXECUTOR'S FEE

Two statutes govern the amount of an executor's fee. The first, SDCL 30–25–7, provides:

> When no compensation is provided by will or the executor renounces all claim thereto, he must be allowed commissions upon the amount of the *personal property accounted for by him,* excluding personal property not ranked as assets, as follows:
>
> > (1) On the first one thousand dollars at the rate of five percent;
> >
> > (2) On all sums in excess of one thousand dollars and not exceeding five thousand dollars at the rate of four percent;
> >
> > (3) On all sums in excess of five thousand dollars at the rate of two and one-half percent.
>
> Upon all real property accounted for by him, the executor shall receive a just and reasonable compensation for the services performed to be fixed by the court. (Emphasis supplied)

The second statute, SDCL 30–25–8, provides:

> All real estate sold by an executor or administrator as part of the proceedings in probate, shall be considered as personal property.

Appellants' objection to Alton's fee centers on the inclusion of income earned during the probate in "... personal property accounted for by him." The income earned consists of various cash funds which Alton deposited or redeposited in one interest bearing account when they became due. Appellants argue that the fee should be determined upon the valuations from the inventory and appraisal, increased only by the amount realized on the sale of the real estate.

We decline to read SDCL 30–25–7 in such a limited fashion. An executor acts in a fiduciary capacity and is required by law to manage the estate in the best possible fashion and use prudence when making investments. He is duty bound to see that the assets do not remain idle under the prevailing circumstances. SDCL ch. 55–5. With this obligation upon the executor, the obvious purpose of SDCL 30–25–7 is to provide fair compensation for an executor's efforts and duties when the will does not so provide. The statute allows a simply devised method of calculating the allowable compensation. It is a necessarily simple and possibly arbitrarily determined figure; yet, it is one which the legislature has chosen to cover those situations where a testator fails to provide otherwise. It is definite and capable of easy calculation and leaves little to dispute.

Appellants urge that the matter should be governed by SDCL ch. 55–13 (Revised Uniform Principal and Income Act) which deals with the allocation of expenses between principal and income and related problems which arise during the administration of trusts and estate. Appellants' reliance upon SDCL ch. 55–13 is misplaced. The primary purpose of SDCL ch. 55–13 is to provide guidance to trustees in the allocation of receipts to principal or income, in defining principal or income, and in the allocation of expenses or costs to principal or income as it relates to income beneficiaries and remaindermen. Thus, by its purpose it does not apply to the facts at issue.

We hold then that income earned during the period of the administration of an estate and accounted for by the executor may be included in the personal property upon which the executor's fees are determined. Income earned, however, should be distinguished from the passive increase in the value of personal property between the date of appraisal and final report. Such a passive increase in value should not be used by itself to enhance the executor's fee and a passive increase in value should never be used to augment an executor's fee if the winding up of the estate's is prolonged without good reason or the executor is dilatory in the performance of his duties. Otherwise, delay, not promptness, would be encouraged.

We conclude, therefore, that the award of executor's fees made by the circuit court was correct and that award is affirmed.

## II.

### THE ATTORNEY'S FEES

The issue of attorney fees has two aspects to consider: (A) Was Marvin's reference in his will to be a standard by which Miller's attorney fees were to be determined binding upon Miller?; (B) Were the fees charged in this case excessive?

### A.

Marvin's will provided that Alton should hire Miller or Miller's law firm to represent the estate and that Miller should be paid legal fees in an amount not to exceed the minimum bar fee schedule for South Dakota. The will was executed in 1972. At that time, the South Dakota Bar Association, an integrated bar, had the following fee schedule adopted and in effect:

A three percent (3%) charge on the first $100,000.00, but not less than $350.00 on regular probate; two and one-half percent (2.5%) on the next $400,000.00; two percent (2%) on all over $500,000.00. The fees based upon gross values.

Fee Schedule Adopted at 39th Annual Meeting, Aberdeen, South Dakota June 19, 1971.[2]

Miller, who prepared Marvin's will, urges that minimum fee schedules are an unlawful restraint of trade and are prohibited by the case of *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). Thus, any reference to standards legal fees which are related to the old minimum fee are outlawed. In this regard, Miller is partially correct. The

**2.** The Bar Commissioners cancelled and repudiated this Fee Schedule at their meeting of August 22, 1975.

*Goldfarb* decision forbids mandatory minimum fee schedules for lawyers by which attorneys are required to charge at least a predetermined fee set by their bar association. But, the fee issue is not covered by the *Goldfarb* decision since Marvin's will sets a maximum fee. By the will Miller could render legal services and charge a fee up to the limit noted in the will, if he so desired to accept employment.

■ More germane to the issue, however, is whether such a clause in a will is mandatory and. binding, or only directive. "[A]ttorney fees are a matter of contract between the personal representative and the attorney." *In re Johnson's Estate*, 68 S.D. 598, 603, 5 N.W.2d 38, 41 (1942). *In the Matter of Estate of Lingscheit*, 387 N.W.2d 738, 741 (S.D.1986). Implicit in that phrase is the understanding that it is the estate representative who contracts for the services, not the testator. The *Johnson's Estate* case, *supra,* also added that the executor is "entitled to reimbursement for attorney fees only for services in the administration of *his* trust. . . ." 68 S.D. at 603, 5 N.W.2d at 41. We conclude that language in the testator's will which attempts to limit the amount of attorney's fees is at best directive and should be considered only as a guidance to the executor in contracting for the fees to be charged by the attorney for his services. To hold otherwise would have the effect of preventing an estate representative from securing the needed assistance of an attorney at a reasonable fee if the will set an arbitrarily low figure for such services. The few cases which have considered this issue agree with this conclusion. *See, In re Olney's Estate*, 255 A.D. 195, 7 N.Y.S.2d 89, appeal dismissed 281 N.Y. 98, 22 N.E.2d 252 (1939).

**B.**

The only evidence at the circuit court level on the amount of Miller's attorney fee was the charge set forth in the final account. In fact, the hearing on the objections was no more than an exchange of comments on each counsel's position. During the appeal argument, Miller conceded

that he kept no office records of the time actually spent performing legal services for Alton. The brief on appeal states, however, that his fee was to "be based upon no more than three percent (3%) of the gross value of the estate." This arrangement with Alton was oral, and no memorandum or letter followed. Miller also conceded at oral argument that this percentage fee required him to perform all the legal services required to close the affairs of the estate.

This court has previously noted in the *Lingscheit* decision that:

> The fee awarded, however, must be supported by evidence in the record, and cannot be solely based on the amount estimated and listed in an inheritance tax report. *Matter of Estate of Hansen*, 366 N.W.2d 852, 855 (S.D.1985).
>
> > Whether the evidence of attorney's fees consists of some itemized statement of time or of the standard percentage charged by attorneys in probate actions, some evidence must exist to show the basis for [the attorney's] fees and to support a conclusion that the fees were reasonable for whatever time was spent or for whatever portion of the probate [the attorney] performed.

387 N.W.2d at 742.

Thus, although the record from the circuit court is notable for the lack of evidence, Miller's concessions are adequate for appellate review since "this Court and the trial court may be considered experts upon the value of legal services." *Stanton v. Saks*, 311 N.W.2d 584, 585 (S.D.1981). This court, however, prefers to review the records of the trial court and not to serve as a judicial body where evidence is received.

Generally, the terms of the fee arrangement between an executor and attorney are left to the agreement of these parties. The fee may be a percentage or based upon a per diem rate or some other method. The attorney should clearly explain the basis for the fee and the work needed to be performed for the estate as well as the time needed to complete matters. In all respects the attorney shall be guided by

Rule 1.5 of the Model Rules of Professional Conduct[3] concerning fees, keeping in mind the suggestion found in the Comment that "A written statement concerning the fee reduces the possibility of misunderstanding."

■ While an agreement as to fees should be given considered weight by the court, if it was a fairly negotiated fee between the parties, the actual fee charged is still subject to the scrutiny of the court for reasonableness unless all participants under the will desire to pay the fee and acknowledge this desire in some fashion. *In the Matter of Estate of Lingscheit, supra; In the Matter of Estate of Hansen,* 366 N.W.2d 852 (S.D.1985). When a fee is challenged as an excessive fee, however, the attorney claiming the fee is required to produce competent evidence to demonstrate the value of his services. Simply put, the attorney has the burden of providing that his fee is justified and reasonable. *In the Matter of Estate of Lingscheit, supra.*

In this case, the fee issue is governed by SDCL 16–18, Appx. DR 2–106 Fees for Legal Services.[4] This provision of the Code of Professional Responsibility was in effect throughout the course of this probate and governs an attorney's conduct through June 30, 1988. DR 2–106 provides in pertinent part:

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skills requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

■ We note the following. Miller is an attorney with forty-six years of experience. He is very able to perform the services involved. The estate was in a very tidy posture when Marvin died. Nearly sixty-eight percent of the estate was in liquid assets. The executor merely had to collect the various certificates of deposit and place them into one account. One sale of personal property was to Alton at appraised values which required no auction. The sale of the remaining personal property was at auction requiring only a normal return of sale. The real estate sale was also straightforward since one person purchased all four sections. Upon a full review of the probate file, there appear to be no unusual problems, litigation, title questions, intricate tax issues, or other legal concerns. The volume of the record does not indicate a great deal of time and labor expended to prepare the documents for the executor. Miller did not claim that he was precluded from accepting other legal work to perform the legal services required. There was no need to handle the work in an accelerated fashion. While Miller has a right to be paid for services based upon his years of experience, this is only one factor to consider. It would have been beneficial to this court had Miller maintained some

---

**3.** The Model Rules of Professional Conduct have been adopted by the South Dakota Supreme Court and are effective July 1, 1988.

**4.** Model Rule 1.5 requires all fees to be reasonable and the concept of clearly excessive is eliminated.

records, but there are none. Based upon Miller's concessions in his brief and at oral argument that his fee was not to exceed three percent of the gross value of the estate, and limited to the facts of this case, we calculate Miller's fee to be $18,674.00 to which state sales taxes should be added. *See generally,* 7 Am.Jur.2d, *Attorneys* § 55.5, Excessive Fees.[5]

## III

### THE BROKER'S FEES

The third issue is whether an attorney for the executor may also impose a charge for real estate broker's fees against the estate based upon a contract between the attorney and executor made after the attorney-client relationship was established. This is a case of first impression for this court. We conclude that such a fee arrangement is not allowable under either the facts of this case or the rules of professional conduct.

■ According to Miller, he was to be paid five percent of the land's gross sale price. Once the broker's contract was signed, Miller claims that he contacted an auctioneer to perform the sale since he was not a licensed auctioneer. Miller claims that he persuaded the auctioneer to accept a fee of one and one-half percent of the gross sale price, one-half of his normal rate, a savings to the estate. The problem with this argument is twofold.

First, when Miller and the auctioneer's fees are added together, the total fees exceed by several percentage points the fee the auctioneer would have charged if he had done the sale alone. If the auctioneer would have performed the sale at three percent, the figure Miller claims that the auctioneer wanted for doing the sale alone, then the total broker/auctioneer fee is three and one-half percent higher causing the estate an added expense of almost $3,700.00. Even if the auctioneer charged

five percent, letting Miller's fee and the auctioneer's fee stand would cost the estate an added $1,700.00. Thus, there is no savings to the estate.

Second, when an auctioneer is hired, it is his job to advertise, promote and complete the sale. The better job of promotion the more the auctioneer usually receives. Why then should Miller be paid five percent to do the work of the auctioneer? The answer is simply that there is no reason. The services being performed by Miller and the auctioneer duplicate each other and it is improper to pay a double fee.

Miller claims that *Dinis v. Hanrahan,* 12 Mass.App. 884, 421 N.E.2d 1250 (1981) provides authority for his percentage for the estate. There are some distinctions between *Dinis* and this case. The court in *Dinis* credited the attorney with selling the land. In this case the auctioneer, not Miller, sold the land. Next, the court in *Dinis* did not approve a straight percentage commission and required evidence of the time spent before a fee would be paid. It was noted that prevailing real estate commission percentages offered little guidance in determining reasonable compensation and reasonable compensation depended upon the facts of each case. Finally, the court seems to have allowed the attorney to perform the executor's duties, thus allowing the attorney to receive some of the executor's compensation, a position we are not disposed to follow. Thus, *Dinis* gives no particular guidance in deciding this matter.

■ Throughout the years, this court has stressed the need for attorneys to avoid situations where they might be seeking double compensation from an estate by acting as both executor and attorney. *See e.g., In re Balbach's Estate,* 56 S.D. 196, 227 N.W. 886 (1929); *In the Matter of Discipline of Theodosen, supra.* In more recent cases, reference has been made to SDCL 16–18, Appx. to resolve the various conflicts which can arise "between a law-

---

**5.** We again point out to members of the bar the contents of SDCL 16–18 App. Canon 5, EC 5–6:
A lawyer should not consciously influence a client to name him as executor, trustee, or lawyer in an instrument. In those cases where a client wishes to name his lawyer as such, care should be taken by the lawyer to avoid even the appearance of impropriety. *See, In the Matter of Discipline of Theodosen,* 303 N.W.2d 104 (S.D.1981).

yer's responsibility to clients, to the legal system and to the lawyer's own interest in remaining an upright person while earning a satisfactory living." Preamble, *Model Rules of Professional Conduct.* We again turn to these rules to aid in settling this conflict.

Canon 9 states, "[a] lawyer should avoid even the appearance of professional impropriety." The ethical considerations instruct that:

EC 9–1 Continuation of the American concept that we are to be governed by rules of law requires that the people have faith that justice can be obtained through our legal system. A lawyer should promote public confidence in our system and in the legal profession.

EC 9–2 Public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer. On occasion, ethical conduct of a lawyer may appear to laymen to be unethical. In order to avoid misunderstandings and hence to maintain confidence, a lawyer should fully and promptly inform his client of material developments in the matters being handled for the client. While a lawyer should guard against otherwise proper conduct that has a tendency to diminish public confidence in the legal system or in the legal profession, his duty to clients or to the public should never be subordinate merely because the full discharge of his obligation may be misunderstood or may tend to subject him or the legal profession to criticism. *When explicit ethical guidance does not exist, a lawyer should determine his conduct by acting in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession.* (Emphasis added)

And, as previously noted "[a] lawyer shall not enter into an agreement for, charge, or collect an ... clearly excessive fee." DR 2–106, *supra.*

The situation presented to the court is unique with little written authority. In one informal opinion by the ABA Committee on Professional Ethics (Inf. Op. C–709) (1964),

the issue involved an attorney who sought to recover a real estate fee (the attorney was a licensed broker) for his part in helping to sell a home through an estate. The committee ruled that the only fee the attorney could recover was the legal fee for representing the client. In so deciding, the committee reasoned, "A real estate brokerage business is so closely related to the practice of law that, when engaged in by a lawyer, it constitutes the practice of law." Miller seems to realize this when he writes in his brief that "the executor's attorney [Miller] was an attorney first and foremost and a broker second."

This court concludes that Miller's request for a broker's fee should not be allowed for ethical reasons. When an attorney deals with his client he should use the required care and caution in doing so and must be particularly sensitive to business arrangements with his client. An attorney is in a unique fiduciary relationship with his clients who generally repose a great deal of confidence in their attorney. Clients continually seek advice and guidance from their attorney and the opportunities for overreaching abound. We are concerned about the message that the present business arrangement would send to the public. We would be approving an additional fee of $5,978.00 to an attorney for selling land which he never sold, but agreed to sell. We would be removing that public confidence which the legal profession must have if its integrity is to be maintained. We would also be sending a message to the bar that some double compensation is allowable despite the past statements to the contrary.

We note for the future that it is doubtful whether this arrangement would pass muster against Rule 1.8(a) Conflicts of Interest: Prohibited Transactions of the Model Rules of Professional Conduct. Rule 1.8(a) prohibits a business transaction with a client unless "(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction." The reason for the rule is obvious as there must be some outside advice to make sure all aspects of the transaction are made known to the client without resulting unfairness. Violation of this rule may lead to disbarment.

*See Giovanazzi v. State Bar of California*, 28 Cal.3d 465, 169 Cal.Rptr. 581, 619 P.2d 1005 (1980).

We decline to limit our holding based upon securing of outside counsel, however. There is a need to limit the attorney's role to that of an attorney in probate proceedings. An attorney should be an attorney first and foremost, not broker or executor or whatever hat he can find to wear.

Miller argues that the executor had a right by SDCL 30–22–21 to enter into a brokerage contract for sale of property. He is correct—as far as he argues. But, it must be remembered that Miller's conduct as a lawyer, not as a broker, is subject to the scrutiny of this court under SDCL 16–18. We do not hold that Miller's conduct was purposefully deceptive or intentionally unethical in view of the lack of existing authority on the topic. This court, however, still has the obligation to consider and rule upon requests if an attorney's conduct is in issue vis-a-vis the rules of professional conduct.

The ethical considerations involved in this conclusion are found in Canons 5 and 9. Canon 5 requires a lawyer to exercise independent professional judgment on behalf of his client. Ethical Consideration 5–1 demands that a lawyer within the bounds of the law exercise his judgment solely for the benefit of his client free of compromising influences and loyalties. Under the circumstances presented, it is improper for a lawyer to maintain such a dual employment relationship with the executor as both attorney and real estate broker. By maintaining such dual employment, the lawyer puts his economic interests ahead of his promised loyalty to his client. Such an arrangement is not permitted under the rules of ethics.

This court has already referred to Ethical Consideration 9–2 wherein a lawyer is encouraged to act in a manner which promotes public confidence in the legal system. We do not believe the present circumstances promotes such confidence. Rather by allowing Miller's fee and the auctioneer's fees we would be condoning an excessive fee contract, that is, endorsing the concept of charging "whatever the freight will bear" rather than approving reasonable charges for needed services.

Those who read this decision may believe that this court is applying the ethical rules too broadly. To such a thought we would respond by requiring the bar to broadly apply the Rules of Professional Conduct to their relationships with their clients. Simply stated, the members of the bar should look to the Rules for guidance as these are the "rules of reason. They should be interpreted with reference to the purposes of legal presentation and of the law itself...." (Scope, Modern Rules of Professional Conduct.) A lawyer should follow the rules, if applicable, not seek loopholes to avoid their use.

As to the executor's fee, we affirm. As to the attorney's fee, we affirm as modified. As to the broker's fee, we reverse.

MILLER, J., and HERTZ and TALBOTT, Circuit Judges, concur.

HENDERSON, Acting C.J., concurs with writing.

KEAN, Circuit Judge, for WUEST, C.J., disqualified.

HERTZ, Circuit Judge, for MORGAN, J., disqualified.

TALBOTT, Circuit Judge, for SABERS, J., disqualified.

HENDERSON, Acting Chief Justice (concurring).

In concurring with this opinion, I wish to state that I truly believe the trial court is being affirmed in all but one respect. That matter of reversal pertains to the broker's fee. Since my first reading of this case, I have been convinced that it was the auctioneer who sold the property, and not the lawyer, and thus the broker was entitled to the fee and not the lawyer. Certainly, the estate should not have to pay a double brokerage fee, or one that exceeds a normal brokerage fee.

It is good that we have legal erudition on the ethics involved in this scenario. We are students of the law, venturing into a

**260**

field which has very little settled law. Under the writing of the majority opinion, the lawyers of this state have a blueprint to follow in the future. This lawyer practiced for some 47 years and has been a well-respected, well-known attorney. By the majority opinion, he has overextended his charge for a brokerage fee.

Not intending to muddy the ethical waters, I call to the Bar and Bench's attention SDCL ch. 36–21, pertaining to real estate brokers and salesmen. This particular chapter was not cited in the briefs nor brought to our attention in oral argument. SDCL 36–21–19 provides:

> *Attorneys exempt—Exception.* This chapter shall not be construed to include an attorney at law, admitted to practice in South Dakota, unless he holds himself out to be in the real estate business or solicits real estate business, in which event he shall obtain a real estate license without examination but he shall be subject to the provisions of this chapter.

As a lifelong resident of South Dakota and member of the State Bar for 37 years, I have noted many lawyers, particularly in smaller communities, who have a law practice and real estate business together. Some of them have been very prominent and influential lawyers in this state. As I conceptualize this entire situation, a lawyer can act as a broker, and make isolated sales without a real estate license. When a lawyer begins to hold himself out as to being in the real estate business, he must obtain a real estate license. I further visualize that the ethical trap a lawyer can get into when selling real estate is to occupy dual or triple relationships with his client. In other words, a lawyer should not get himself into a position where he is the executor for the estate, then probates the estate by virtue of being the estate's attorney, and also then sells land for the estate as a broker. It becomes apparent that, acting in several capacities, professional skills become interwoven with commercial gain. Loyalties become muddled or totally antagonistic. Surely, a lawyer should not be a "middleman."

The South Dakota Rules of Professional Conduct, SDCL ch. 16–18, Appx., effective July 1, 1988, which replaced the former Code of Professional Responsibility, provides that a lawyer shall not represent a client if that representation may be materially limited by the lawyer's own interests unless the lawyer reasonably believes the representation will not be adversely affected and the client consents after consultation. (Rule 1.7(b)). In cases like this, where a lawyer functions in several capacities, his interests diverge from, and inherently conflict with, those of his client.