In the Matter of the ESTATE OF
Lloyd MATHISON, Deceased.

Nos. 17032, 17038 and 17053.

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1990.

Decided April 3, 1991.

Michael B. Crew of Crew & Crew, Sioux Falls, for appellant.

Thomas J. Farrell of Pruitt, Matthews & Muilenburg, Sioux Falls, for appellee Credit Management, Inc.

Scott N. Peters of Gibbs, Feyder, Myers, Peters & Butler, Sioux Falls, for appellee AAA Collections, Inc.

Robert L. Jones, Sioux Falls, for appellee Allied Collection Service, Inc.

James R. Myers of Gibbs, Feyder, Myers, Peters & Butler, Sioux Falls, for appellee Bradfelt, Inc.

MILLER, Chief Justice.

This is an appeal from a final order distributing estates. By notice of review, judgment creditors claim they have priority over nonjudgment creditors against an insolvent estate comprised principally of the home of the decedents. We affirm in part, reverse in part and remand.

## FACTS

Lloyd Mathison died intestate on December 31, 1987. Bernetta Mathison, his widow, died intestate on March 21, 1988. They were survived by four adult children.

By separate petitions filed in April, 1988, one of their daughters, Cynthia McFarland, sought to be appointed administratrix of both estates.[1] On June 6, 1988, the circuit court entered orders granting McFarland letters of administration.

When Lloyd died, the home of the parties was titled solely in his name. The only other property he owned was personal effects and household goods. When Mrs. Mathison died, approximately three months later, she had $248.00 in a bank account, personal effects and household goods, together with any interest she may have succeeded to in the real estate owned by her husband.

Creditors claims, and judgments, totaling $79,280.27 were approved against Lloyd's estate. Creditors claims, including judgments, in the amount of $87,782.50 were approved against Bernetta's estate. (Some of those were for claims approved in Lloyd's estate.) Specifically, the following judgments existed:

| Creditor | Judgment Date | Amount | Debtor |
|---|---|---|---|
| Credit Management | 2–28–83 | $ 2,008.04 | Lloyd only |
| (Execution issued July 27, 1983) | | | |

---

1. For reasons which become obvious later in this opinion, these estates should never have been formally probated through letters of administration and the resultant more complicated and expensive procedures. We can see absolutely no reason why there was not a summary administration of these small, insolvent estates under the provisions of SDCL ch. 30–11. Note that under SDCL 30–11–2 even a creditor may petition for such a summary administration.

| Creditor | Judgment Date | Amount | Debtor |
|----------|---------------|--------|--------|
| Allied | 9–21–84 | $14,338.81 | Lloyd & Bernetta |
| (Execution issued October 12, 1984) | | | |
| Bradfelt | 2–22–85 | $11,207.82 | Lloyd & Bernetta |
| (No Execution) | | | |
| Credit Management | 6–24–85 | $ 3,110.17 | Lloyd & Bernetta |
| Docketed | 6–24–85 | | |
| Filed | 6–25–85 | | |
| (No Execution) | | | |
| Business Collection Inc | 4–4–86 | $ 9,124.76 | Lloyd & Bernetta |
| (No Execution) | | | |
| Business Collection Inc | 4–4–86 | $10,670.84 | Lloyd & Bernetta |
| (No Execution) | | | |
| Allied | 10–31–86 | $ 4,417.93 | Lloyd & Bernetta |
| (No Execution) | | | |
| AAA | 4–27–87 | $ 1,881.95 | Lloyd & Bernetta |
| (No Execution) | | | |

---

Pursuant to an order confirming sale dated June 5, 1989, the administratrix sold the property for $43,100.00 ($30,000 for the real estate and $13,100 for the house—they were sold separately). Costs of sale totaling $9,087.08 were approved, leaving a balance of $34,012.92.

By a joint final account in both estates, the administratrix proposed, among other things, that two-thirds of the sale's proceeds be allocated to Lloyd's estate and one-third to Bernetta's. In distributing the estates, however, the trial court held that the balance of funds remaining after payment of both estates' administratrix and attorney fees and expenses should be allocated to certain creditors in Lloyd's estate (there being no funds to distribute to Bernetta's creditors). There was no provision in the order for either decedent's funeral expenses and certain expenses of last illness. In the order distributing the estate, the court gave no priority to judgment creditors over other claimants.

**2.** SDCL 29–1–5 provides, in pertinent part:
... If the decedent leave a surviving husband or wife, and more than one child living, ... his estate is succeeded to and must be distributed one-third to the surviving husband or wife, and the remainder in equal shares to his children,....

**3.** SDCL 30–20–7 provides:

## ISSUE I

WHETHER THE TRIAL COURT ERRED IN HOLDING THAT BERNETTA DID NOT SUCCEED TO A ONE-THIRD INTEREST IN HOMESTEAD PROPERTY FREE OF THE CLAIMS OF CREDITORS OF LLOYD.

Administratrix argues that upon Lloyd's death, Bernetta succeeded to an undivided one-third interest in the homestead real estate citing SDCL 29–1–5.[2] She asserts that the homestead and all proceeds from the sale thereof are not subject to the payment of debts existing against Lloyd previous to or at the time of his death, except as provided in the statutes relating to homesteads, citing SDCL 30–20–7;[3] *In re Donnelly's Estate*, 55 S.D. 426, 226 N.W. 563 (1929). Thus, administratrix argues that one-third of the property became available to apply towards Bernetta's debts and two-thirds remained available towards Lloyd's debts. Creditors respond, contending that homestead rights which Bernetta received upon her husband's death did not

The homestead, or equity in a homestead, as determined by the court, and all proceeds of the sale thereof shall not be subject to the payment of any debt or liability contracted by or existing against the homestead claimant, previous to or at the time of the death of such homestead claimant, except as provided by the statutes relating to homesteads.

vest her with any title to the real property, but merely gave her the right to occupy the property until her death.[4] *It is important to note that no claim of homestead was made during Bernetta's lifetime.* SDCL 30–20–5. In fact, no estate proceedings whatsoever were commenced in Lloyd's estate until April 28, 1988, five weeks *after* Bernetta's death. Thus, at the time of her death, any *homestead* interest that Bernetta may have had in the real property terminated as a matter of law. *See Speck v. Anderson,* 318 N.W.2d 339 (S.D.1982) (*Speck I*).

Administratrix confuses *homestead* rights with intestate *succession.* In *In re Clouse's Estate,* 63 S.D. 147, 150–51, 257 N.W. 106, 108 (1934), we stated:

> The right of homestead is not, under the laws of this state, an estate in land, but is a mere privilege granted by the Legislature in fulfilling the constitutional mandate of section 4, art. 21, and consists of the right of occupancy given to the surviving spouse and minor children and does not pass by succession, showing clearly that when the need for protection for the family ceases, then there is no longer any reason for the homestead. The homestead exemption is therefore temporary and exists only so long as the conditions prevail under which it was allowed by the homestead law.

*See also Bailly v. Farmers' State Bank,* 35 S.D. 122, 150 N.W. 942, 944 (1915).

Here, Lloyd's estate was insolvent, thus his property passed to his heirs subject to the control of the court for purposes of administration and payments of his debts. *See* SDCL 29–1–2.[5] As his debts exceeded the value of his property, there was noth-ing to distribute to any heirs, including Bernetta's estate.

Thus we hold that the circuit court's determination that Bernetta did not succeed to a one-third interest in "homestead" property free of the claim of Lloyd's creditors was correct.

## ISSUE II

WHETHER THE TRIAL COURT ERRED IN FAILING TO ORDER THAT LLOYD'S FUNERAL EXPENSES AND EXPENSES OF LAST ILLNESS BE PAID BEFORE PAYMENT OF CREDITORS' CLAIMS.

■ Barnett–Lewis Funeral Home filed a proof of claim against Lloyd's estate for funeral expenses in the amount of $2,736.00. Sioux Falls Ambulance filed a proof of claim in Lloyd's estate in the amount of $174.94 as an expense of last illness. These claims were allowed by the administratrix and approved by the court in its order on creditor's claims. The joint final account proposed to pay these claims in full. However, such expenses were not included in the joint order distributing the estate. It is not clear to us, from a review of the record, why they were excluded.

In determining priorities in claims against estates, courts must examine SDCL ch. 30–21. Specifically, SDCL 30–21–1 provides:

> *Except as provided by § 30–21–2,* all demands against the estate of any deceased person *must* be paid in the following order:
>
> (1) The *expenses of administration;*
> (2) *Funeral expenses,* including reasonable cost of burial lot, and not to

---

4. SDCL 30–20–1 provides:
   Upon the death of any husband or wife or head of a family, having selected or being entitled to select a homestead as provided by law, the survivor or survivors of such homestead claimant, entitled thereto under the provisions of law, may continue to have the exclusive *possession* of the homestead as defined by law until it is otherwise disposed of, and have the rents and profits thereof as a whole or in shares according to law and as it may be dealt with by law. (Emphasis added.)

5. SDCL 29–1–2 provides:
   The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate subject to the control of the circuit court for the purposes of administration, and to the possession of any administrator lawfully appointed. All such property shall be chargeable with the expenses of administration, the payment of decedent's debts, and the allowance to his family, except as otherwise provided in this code.

exceed fifty dollars for the marker on grave;

(3) The expenses of *last sickness;*

(4) Any debt that may be due by decedent personally to servants and employees for services rendered within the sixty days next preceding his death;

(5) Debts having preference by the laws of the United States;

(6) All other demands against the estate. (Emphasis added.)

Furthermore, SDCL 30–21–2 provides:

Where a lien for any demand exists by mortgage, pledge, attachment, *judgments,* or execution levy, such lien shall have preference according to its priority to the extent of such demand, *on any specific property* on which such lien shall have attached. (Emphasis added.)

Under these statutes, only the judgment creditors would arguably have priority over expenses of administration, funeral expenses and expenses of last illness. It must be noted, however, that in order to have such a priority, the judgment must *attach* to *specific property.* SDCL 30–21–2.

Admittedly, a general money judgment becomes a lien against all real property of the judgment debtor. SDCL 15–16–7. However, unlike a foreclosure judgment (and others which directly affect specific real estate) it is not a judgment against *specific property* as required by SDCL 30–21–2. To hold that all judgments were contemplated by SDCL 30–21–2, would totally nullify the last phrase of that statute, rendering such phrase meaningless.

Therefore, because the judgments involved here were general money judgments against individuals, rather than judgments attaching as liens against the specific property, they are not within the exception created by SDCL 30–21–2 and thus become a demand against the estate under subsection (6) of SDCL 30–21–1.

Further, it must be observed that under SDCL 15–16–7 a general judgment *does not* become a lien against the debtor's homestead. Therefore, during his lifetime,

the judgments against Lloyd, itemized earlier, did not become a lien against the real estate herein.

SDCL 30–21–4 provides:

The executor or administrator, as soon as he has sufficient funds in his hands, *must pay the funeral expenses, the expenses of the last sickness,* and the allowance made to the family of the decedent. He may retain in his hands the necessary expenses of administration, *but he is not obliged to pay any other debt or any legacy until,* as prescribed in this chapter, *the payment has been ordered by the court.* (Emphasis added.)

"In arriving at the intention of the Legislature, it is presumed that the words of the statute have been used to convey their ordinary, popular meaning." *Appeal of AT & T Information Systems,* 405 N.W.2d 24 (S.D.1987); *Oahe Conservancy Subdistrict v. Janklow,* 308 N.W.2d 559, 561 (S.D. 1981); *Wood v. Waggoner,* 67 S.D. 365, 293 N.W. 188 (1940). "We read statutes to give effect to all provisions." *Hartpence v. Youth Forestry Camp,* 325 N.W.2d 292, 295 (S.D.1982); *Matter of Silver King Mines,* 315 N.W.2d 689 (S.D.1982); *State v. Heisinger,* 252 N.W.2d 899 (S.D.1977).

It seems obvious to us that by enacting SDCL 30–21–4 the legislature intended to give expenses of administration, funeral expenses, expenses of last illness, and family allowances priority over other estate debts. In fact, the statute authorizes payment of those priority claims without prior approval of the court.

With the foregoing principles in mind, we determine that the trial court erred in failing to provide for the payment, *in Lloyd's estate,* of funeral expenses and expenses of last illness on a priority basis.

## ISSUE III

WHETHER JUDGMENT CREDITORS IN AN INSOLVENT ESTATE COMPRISED SOLELY OF REAL ESTATE HAVE PRIORITY DETERMINED BY THE ORDER OF THE FILING OF THEIR JUDGMENTS.

■ The order on creditors' claims allowed eleven specific claims, including those for funeral expenses and expenses of last illness identified earlier. (It also approved those of Dr. Bhatti, which would appear to be an expense of last illness). The order then approved the judgment creditors' claims itemized earlier, together with three other miscellaneous claims, including one for real estate attorney's fees (not related to the estate), another for flowers (inventory for Lloyd's florist business), and finally, one for real estate taxes owed to Minnehaha County.

However, in its order distributing estates, the trial court ordered payment, on a pro rata basis, of the claims of Dr. Bhatti, the attorney, flower inventory, and the judgment creditors. (The claims owed to Barnett–Lewis Funeral Home and Sioux Falls Ambulance Service were not included.)

By notice of review, Allied Collection Service, Inc., Credit Management, Inc., and Bradfelt, Inc., argue that the order distributing Lloyd's estate entered herein is improper because it did not provide for the distribution of the proceeds of the estate to the judgment creditors in a *chronological* order. They claim that priority is established by the date of the filing of the judgment, citing SDCL 44–2–1.[6] Appellee AAA Collections, Inc. contends that the order distributing Lloyd's estate should be modified to provide for the distribution of all proceeds of such estate to all of Lloyd's judgment creditors on an *equal* priority basis under the provisions of SDCL 30–21–2.

The trial court in reality held that after classes (1) through (5) of SDCL 30–21–1 were paid in full, all remaining creditors were to be paid *pro rata*. We agree. Although the procedures followed by the circuit court were correct, we remand for the reallocation of the debts of the estate in a manner consistent with this decision.

6. SDCL 44–2–1 provides:
   Other things being equal, different liens upon the same property have priority according to the

## ISSUE IV

WHETHER THE CIRCUIT COURT ERRED IN ITS ORDER SETTING ADMINISTRATRIX' AND ATTORNEYS' FEES.

■ In the joint final account, administratrix requested that she be allowed a total fee of $1,162.50 for her services to both estates. The trial court allowed only $300.00. Furthermore, administratrix had entered into a contract with the law firm of Crew and Crew to provide legal services for the administration of both estates. The agreement provided that the firm would be paid $85.00 an hour. Based on this contract, the law firm claimed to be entitled to attorney fees, including sales tax and disbursements, of $7,707.71. (The firm also defended administratrix against an effort to have her removed on the grounds of neglect.) The court ultimately approved attorney fees in the amount of $2,000.00, plus expenses.

With respect to administratrix' fees, the following statutes apply:

SDCL 30–25–7 provides;

When no compensation is provided by will or the executor renounces all claim thereto, he *must* be allowed commissions upon the amount of the personal property accounted for by him, excluding personal property not ranked as assets, as follows:

(1) On the first one thousand dollars at the rate of five percent;

(2) On all sums in excess of one thousand dollars and not exceeding five thousand dollars at the rate of four percent;

(3) On all sums in excess of five thousand dollars at the rate of two and one-half percent.

Upon all real property accounted for by him, the executor shall receive a just and reasonable compensation for the services performed to be fixed by the court. (Emphasis added.)

SDCL 30–25–8 provides:

time of their creation.

All *real estate* sold by an executor or administrator as part of the proceedings in probate, *shall* be considered as *personal property.* (Emphasis added.)

Therefore, as to the administratrix, based on the plain language of the statutes, the trial court must award the statutorily set fee. As we stated in *Matter of Estate of Schuldt,* 428 N.W.2d 251, 254 (S.D.1988) (Schuldt I):

> [T]he obvious purpose of SDCL 30–25–7 is to provide fair compensation for an executor's efforts and duties when the will does not so provide. The statute allows a simply devised method of calculating the allowable compensation. It is a necessarily simple and possibly arbitrarily determined figure; yet, it is one which the legislature has chosen to cover those situations where a testator fails to provide otherwise. It is definite and capable of easy calculation and leaves little to dispute.

Thus, we reverse the trial court on the award of administratrix' fees, and remand for an appropriate determination of those fees in light of this opinion.

■■■ As to the issue involving attorneys' fees, generally, the fee arrangement between an executor and an attorney are left to the agreement of the parties. *Id.* at 255. While this agreement is to be given weight by the court, the actual fee paid is still subject to the scrutiny of the court for reasonableness. *Id.* at 256 (citing *In the Matter of the Estate of Lingscheit,* 387 N.W.2d 738, 741 (S.D.1986); *In the Matter of Estate of Hansen,* 366 N.W.2d 852 (S.D. 1985)). When a fee is challenged as excessive, the attorney has the burden of proving that it is justified and reasonable. *Id.* (citing *Lingscheit, supra* ). The standard to be applied is one of reasonableness. Factors to be considered in determining whether or not a fee is reasonable include: the time and skill required; whether the case precluded the attorney from accepting other employment; the fee customarily charged in the locality; the amount involved and the results obtained; the time limitations imposed; the nature and length of the relationship; the experience, reputa-tion and ability of the attorney; and whether the fee was fixed or contingent. *Estate of Schuldt, supra.*

■■■ The trial court found that the attorney fee was not reasonable in light of the amount of time required and the fact that it was not shown that this case precluded the attorney from accepting other employment. The trial court had before it the estate's attorneys' fee request, time sheets, the creditors' objections to the fees, and the court's own knowledge of the proceedings. The trial court determined a reasonable fee to be in the amount of $2,000 plus sales tax and expenses.

The payment of attorneys' fees is discretionary with the trial court. *Schuldt I, supra; Lingscheit, supra; Hansen, supra;* 31 Am.Jur.2d, *Executors and Administrators* § 474–486 Reasonable Compensation (1989). Upon reading the record in this case, we find no abuse of discretion.

■■■ In affirming in part, reversing in part and remanding, we recognize that the result makes no provision for the expenses of administration or funeral and last illness of Bernetta. Lloyd's insolvent estate leaves nothing for payment of *any* of her debts. We reiterate (see footnote 1) that these estates should never have been formally probated. It has resulted in unnecessary expenses to everyone, not to mention the expenditure of judicial resources.

HENDERSON and SABERS, JJ., and MORGAN, Retired Justice, concur.

WUEST, J., concurs specially.

AMUNDSON, J., not having been a member of the Court at the time this case was considered, did not participate.

WUEST, Justice (concurring specially).

I agree with the majority on issues I, III and IV and the result reached in II. On issue II, in my opinion, since the general judgments did not become a lien upon the homestead, the expenses enumerated in SDCL 30–21–1, as a matter of policy, should take precedence over the general judgments, as written by the majority. Where I part company with the majority on

issue II is the comment regarding judgments against "specific property." In my opinion, absent a homestead, general judgments do attach, becoming liens on "specific property." As I read the majority comment, it seems to imply otherwise, leaving the law in a state of ambiguity.